**Stanley SHOSTAK, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, et al., Defendants.**

**Civ. No. 86–0081 P.**

United States District Court, D. Maine.

June 9, 1987.

Jane Andrews, Andrews & Gauvreau, Lewiston, Me., for plaintiff.

James Burrows, Senior Atty., Office of General Counsel, U.S. Postal Service, Windsor, Conn., David R. Collins, Asst. U.S. Atty., Portland, Me., for defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Stanley Shostak, the Plaintiff in this case, was terminated from his position as a part-time flexible clerk with the United States Postal Service approximately a week before the end of his 90–day probationary period. Plaintiff, who was fifty-eight years old at the time, alleges that he was terminated because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633(a) (ADEA). The case was tried to the Court, sitting without a jury.

In November 1983, a position for a part-time flexible clerk became vacant at the Lewiston, Maine branch of the United States Postal Service. Lewiston Postmaster Roland Metayer inquired about current postal employees who had requested a transfer and became aware that the Plaintiff, then a substitute rural mail carrier, had expressed interest in filling such a position. Mr. Metayer, a Defendant in this case, contacted the Plaintiff and arranged an interview in which Defendants Roger Morin, Supervisor of Postal Operations at Lewiston, and Albert Grandmaison, Supervisor of Mail and Delivery at Lewiston, also participated. Each of the three administrators were impressed with Plaintiff's per-

formance at the interview, and they unanimously agreed that he should be offered the position on a probationary basis.[1]

Clerk-craft employees at Lewiston perform a variety of duties; however, except for window clerks, their primary responsibility is to sort mail and prepare it for delivery. New clerks serving their probationary period receive up to forty hours of "scheme training," normally at the rate of two hours a day, during which they must memorize the distribution scheme so that they are able to sort mail. Their progress is tested periodically until they demonstrate an ability to sort a sample of mail taken at random from Lewiston's twenty-seven carrier routes with at least ninety-five percent accuracy. Probationary employees who prove unable to pass such a test within approximately a week of completing their forty hours of training are terminated. Employees who pass the test continue to serve their ninety-day probationary period, during which they may still be terminated if their overall performance proves to be unsatisfactory.

Plaintiff alleges that toward the beginning of his probationary period, Defendant Morin decided that he was too old for the job and then, with the assistance of the other Defendants, manipulated his training and work assignments so as to inhibit his progress and ensure his ultimate failure.[2] Plaintiff's primary complaint is that approximately half way through his training his supervisors began scheduling him for only one hour of training a day instead of two, thereby delaying his progress. Probationary employees are not allowed to sort "live" mail until they have demonstrated at least ninety-five percent proficiency on sorting mail drawn at random from seventy-five percent of the addresses in Lewi-

ston. Plaintiff alleges that the reduction in his daily training time resulted in a delay in his qualifying to sort live mail and that it was this delay that left his proficiency at a low level at the end of his probationary period and resulted in his termination. Plaintiff also alleges that his training was often scheduled toward the end of his shift when he was too tired to fully benefit from it, and that he was disadvantaged by having too many days when no training was scheduled at all.

The Defendants agree that Plaintiff's training time was reduced from two hours a day to one hour a day approximately half way through his training period, but they contend that this change was made for the Plaintiff's own benefit and with his consent. Probationary employees are required to pass a test on all twenty-seven routes after receiving a maximum of forty hours of training, and the parties agree that after nineteen hours of training, Plaintiff was proficient on only nine routes. Defendant Grandmaison testified that other probationary employees had benefited from training only one hour a day instead of two, finding it easier to memorize the required information in smaller doses. He testified that he suggested such a change to the Plaintiff and that the Plaintiff agreed to give the new schedule a try.[3] In addition, Defendant Claire Breton testified that when she was a probationary employee, her own training hours were similarly adjusted and that she found the change beneficial.

The evidentiary record does lend some support to Plaintiff's allegation that his training time often fell late in his shift when he might be expected to be somewhat fatigued. On average, the Plaintiff received his scheme training 3.7 hours into

---

**1.** All newly appointed clerk-craft employees are required to serve a ninety-day probationary period.

**2.** In addition to certain specific alleged acts of discriminations delineated in the text, Plaintiff bases his claim of age discrimination on several statements alleged to have been made by Defendant Morin. Postal Service employee Joseph Bussiere testified that a few weeks after the Plaintiff started working at Lewiston, he and Defendant Morin observed the Plaintiff sweat-

ing and having a difficult time lifting heavy mail bags. Bussiere testified that at that time Morin said to him that the Plaintiff was too old for the job. Plaintiff has also alleged that Defendant Morin once told him that it was harder to learn as one gets older, a statement that Morin denies having made.

**3.** Plaintiff denies that he was consulted on whether or not the scheduling change should be made.

his shift. The Court notes that three other probationary employees, who were trained during approximately the same time period as the Plaintiff, received their scheme training an average of 3.4, 2.4, and 1.9 hours into their shifts. An even greater disparity appears in comparing the frequency with which these employees had their scheme training scheduled after a full day at work. Plaintiff received his training after working at least six hours approximately thirty-five percent of the time; in contrast, one of the other probationary employees received his training after working six or more hours only seventeen percent of the time, and the other two probationary employees never received training after working six or more hours.

On the other hand, the Court finds little support for Plaintiff's argument that he was disadvantaged by having an unusually high number of workdays during which he received no scheme training. A review of the evidence indicates that Plaintiff had approximately the same percentage of workdays without scheme training as did other probationary employees.[4] In addition, Defendant Grandmaison has testified that on at least one occasion Plaintiff asked to be excused from scheduled scheme training, saying that he was too tired to benefit from it.

Defendants deny that they "set up" the Plaintiff so that he would fail, or that their failure to retain him was motivated by age discrimination. Several of the Defendants testified that they gave Plaintiff advice on how to improve his performance at sorting mail, and Plaintiff acknowledges that he received such advice. Defendants allege that Plaintiff was discharged solely for poor performance. Plaintiff's progress was tested on December 28, January 11, January 17, January 21, January 31 and February 3, and on none of these occasions was he able to qualify to sort live mail. According to Postal Service policy, probationary employees who have not gained district-wide competence after forty hours

of training are automatically sent a notice of termination. After they receive the notice they are given approximately one more week to meet Postal Service standards; they are allowed to sort live mail during that week so as to gain competence and they may retake the test once each day. Plaintiff was sent such a letter of termination on February 9 and was able to pass a qualifying test on February 11, thereby avoiding automatic termination.

Although Plaintiff did finally pass his qualifying test, Defendants testified that they were concerned over the ensuing weeks about his lack of speed at sorting mail and, in particular, about the fact that he did not improve with practice. In addition, they testified that his performance in other areas was also deficient: although repeatedly assigned the group of tasks known as the "Walker Tour," late in his probationary period Plaintiff still made many errors when performing Walker Tour duties; he also showed a lack of proficiency and progress on assignments known as van assist and letter dumping. In addition, Defendants testified that Plaintiff was sometimes absent from his work station without permission. The written evaluations Plaintiff received throughout his probationary period repeatedly indicated numerous areas in which he failed to demonstrate satisfactory performance.

The usual manner of analysis in a case where employment discrimination is alleged is to determine whether or not the plaintiff has made a *prima facie* showing of discrimination, and if so, whether any explanation articulated by the employer is legitimate or merely a pretext. The burden of proof rests at all times with the plaintiff. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Loeb v. Textron Inc.,* 600 F.2d 1003 (1st Cir.1979). This method of analysis need not be rigidly adhered to, however, and

4. During the period that he was eligible for scheme training, Plaintiff received such training on 31 of his 38 work days, or 82% of the time. The other three employees received scheme training on 19 out of 19 workdays, or 100% of the time; 18 out of 22 workdays, or 82% of the time; and 17 out of 23 workdays, or 74% of the time.

[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). Under such circumstances, the Court may focus on the ultimate question of whether or not Plaintiff has proved discrimination by a preponderance of the evidence.

In the present case, there is ample evidence that the Plaintiff was discharged for a legitimate reason, *i.e.,* unsatisfactory job performance. Plaintiff had a very difficult time passing the basic qualifying test for mail sorting, and the uncontroverted testimony before the Court is that his speed upon passing was very slow and did not improve over the ensuing three weeks before his termination. In addition, the evidence indicates that Plaintiff's performance in other areas of his job was also deficient.

The Court is also not persuaded by Plaintiff's argument that he was "set up" to fail by the Defendants. Initially, the Court notes that the Plaintiff was hired after a face-to-face interview with the very Defendants he alleges engineered his "set up." Plaintiff's approximate age must have been readily apparent during his interview and if the Defendants wished to avoid hiring a man of that age, their most likely course would have been to simply not offer him the position. The simple fact that the Defendants knew what they were getting is potent evidence against the proposition that a few weeks later they decided to discriminate against the Plaintiff because of his age. *See Dugan v. Martin Marietta Aerospace,* 760 F.2d 397, 399 (2d Cir.1985).

In addition, the Court finds it probative that there has clearly been no pattern of age discrimination at the Lewiston Post Office. As of February 1984, fifty-one of Lewiston's seventy-six employees were over the age of forty, twenty-one were between the ages of fifty-one and fifty-nine, and seven employees were between the ages of sixty and sixty-four. Five of the six employees hired or transferred into clerk-craft positions at Lewiston between February 1982 and February 1984 were over forty years of age.

The Court is persuaded that the decision to reduce the Plaintiff's training time from two hours a day to one was made in good faith and as an effort to assist him. The record establishes that such a change had proved helpful in the past and that the Plaintiff's slow progress prior to the change placed him at serious risk of being terminated for failure to learn the required material in the amount of time allocated. The Court also finds that Plaintiff was not assigned an unusually high number of workdays without scheme training. In addition, the Court concludes that Plaintiff did receive his scheme training late in his shift more often than did other probationary employees trained in roughly the same time period, but that this fact, standing alone, is not sufficient to establish age discrimination in a case where numerous other factors suggest that such discrimination did not occur.

Finally, the Court does not consider Defendant Morin's comment to Joseph Bussiere, that Plaintiff was "too old for the job," to be proof of age discrimination. According to Bussiere, the comment was made when Shostak was struggling with heavy mail bags, sweating, and looking tired. In *Loeb,* the First Circuit recognized that Congress "made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence." 600 F.2d at 1016. Morin's statement to Bussiere reflected his opinion that Shostak's age was making it difficult for him to perform

an assigned task; it did not indicate any intention to discriminate because of age.[5]

Accordingly, it is ORDERED that judgment be, and it is hereby, entered for the Defendants.

---

**5.** The Court need not decide whether or not Defendant Morin actually told the Plaintiff that it becomes harder to learn as one gets older, because it concludes that even if this statement were made, it is insufficient, given the weight of the rest of the evidence, to change the result in this case.