**Philip W. HOLMES, Plaintiff,**

v.

**MARRIOTT CORPORATION, Defendant.**

No. 4–92–CV–30004.

United States District Court,
S.D. Iowa, C.D.

Aug. 31, 1993.

Frederick W. James and Michael J. Carroll of Dwight W. James & Associates, P.C., Des Moines, IA, for plaintiff.

Philip H. Dorff, Jr. and Hugh Cain of Hopkins and Huebner, P.C., Des Moines, IA, for defendant.

**RULING ON DEFENDANT MARRIOTT CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

BENNETT, United States Magistrate Judge.

**TABLE OF CONTENTS**

I. INTRODUCTION AND BACKGROUND ... 694

 A. Marriott's Summary Judgment Motion ... 694

 B. Factual Background ... 695

 C. Procedural Background ... 695

 D. Burdens of Proof Under the ADEA ... 696

II. SUMMARY JUDGMENT STANDARDS ... 698

III. THE INFERENCE OF NONDISCRIMINATION ESTABLISHED IN *PROUD V. STONE*, 945 F.2D 796 (4TH CIR.1991) AND *LOWE V. J.B. HUNT TRANSPORT, INC.*, 963 F.2D 173 (8TH CIR.1992). ... 699

 A. Introduction ... 699

 B. The Rule Articulated in *Proud v. Stone*, 945 F.2d 796 (4th Cir.1991) ... 699

 C. The Eighth Circuit's Adoption of the Rule in *Proud v. Stone*, 945 F.2d 796 (4th Cir.1991) ... 700

 D. Application of the Rule in *Proud–Lowe* to Marriott's Summary Judgment Motion ... 701

 1. Holmes' Intra–Corporate Transfer ... 701

 2. The Requirement of the Same Decision Makers ... 702

 3. Holmes' Direct Evidence of Discrimination ... 703

IV. STATEMENTS OF MARRIOTT EMPLOYEES—ARE THEY "STRAY REMARKS," REMARKS UNRELATED TO ACTUAL AGE–BASED DISCRIMINATION, REMARKS NOT ATTRIBUTABLE TO THE DECISION MAKERS, OR ARE THEY DIRECT EVIDENCE OF DISCRIMINATION. ... 703

 A. Introduction ... 703

 B. Stray Remarks ... 704

 C. The Contents of the Statements at Issue ... 706

D. Application of the "Stray Remarks" and the "Diminished Vigor" Rationale to the Statements at Issue — 707

V. MARRIOTT'S BUSINESS JUDGMENT — 708

VI. MARRIOTT'S OFFER OF REINSTATEMENT—CONDITIONAL OR UNCONDITIONAL? — 708

A. Introduction — 708

B. The Admissibility of Marriott's Offer of Reinstatement to Holmes — 710

C. The May 20, 1991 Offer of Reinstatement to Holmes — 711

VII. CONCLUSION — 713

This is an age discrimination suit pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, ("ADEA") with a pendent state law claim under the Iowa Civil Rights Act ("ICRA"), Iowa Code chapter 216 (formerly chapter 601A) (1993). This litigation arises from the termination of Plaintiff Philip W. Holmes' ("Holmes") employment on July 13, 1990, as director of services at the Des Moines Marriott Hotel. Marriott Corporation ("Marriott") has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) on each of Holmes' claims.[1]

## I. INTRODUCTION AND BACKGROUND.

### A. Marriott's Summary Judgment Motion

Marriott's Motion for Summary Judgment raises four issues: (1) that Holmes cannot prevail on his claims of age discrimination because he can present no genuine issue of material fact concerning discrimination when he was hired at the age of 53 and was fired a little more than 12 months later; (2) that Holmes' claim of direct evidence of age discrimination based upon several statements by Marriott's employees must fail because the statements were not made by the decision maker who terminated Holmes nor are the statements probative of age-based dis-

---

1. Holmes views Marriott's summary judgment motion as strictly limited to the ADEA claim and not Holmes' claim under the ICRA. Br. in Resistance to Def.Mot. for Summ.J. at 5. Marriott's various submissions relating to its summary judgment motion are ambiguous on this question. For example, in a conclusion of its first argument in its brief in support of summary judgment Marriott argues: "In these circumstances, the purpose of ADEA would be served by dismissing the Plaintiff's case." Br. in Supp. of Def.Mot. for Summ.J. at 5. No mention is made of Holmes' ICRC claim. On the other hand, Marriott's actual motion for summary judgment states: "Plaintiff cannot show any evidence of age discrimination and as such would not be able to prevail either before a jury or the court on his *claims* of age discrimination (emphasis supplied). Def.Mot. for Summ.J. at ¶ 3. Notwithstanding these and other similar ambiguities throughout Marriott's summary judgment submissions, the court will apply each of Marriott's arguments with equal force to Holmes' claims under the ICRA. This is especially appropriate in light of the Iowa Supreme Court's holding that the conceptual framework for establishing a *prima facie* case under the ADEA is also the same

framework to be applied to an age discrimination claim arising under the ICRA. *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 893 (Iowa 1990).

The Iowa Supreme Court has observed, concerning a plaintiff's *prima facie* case of age discrimination under the ICRA, that a plaintiff:

may prove age discrimination by either of two methods. One method is to present direct or circumstantial evidence that age was a determining factor in the employer's employment decision. The other method of proof is to utilize the indirect, burden-shifting method of proof as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*Landals*, 454 N.W.2d at 893. This is in accord with federal law. *See, e.g., Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir.1991) (quoting *Blake v. J.C. Penney Co.*, 894 F.2d 274, 278 (8th Cir.1990)) (" 'Under the ADEA, a plaintiff may show discrimination by either direct or indirect methods of proof.' ") Thus, there appears to be no difference between the elements for establishing liability on an age claim under the ADEA or the ICRA.

crimination; (3) that this court should not second guess the business decision by Marriott to terminate Holmes for unsatisfactory job performance as director of services and that Holmes is not able to generate the material fact question to overcome Marriott's asserted legitimate nondiscriminatory reason for his termination; and (4) that Holmes' rejection of Marriott's unconditional offer of reinstatement tolls the back pay period.

Before turning to the merits of each of Marriott's arguments in support of summary judgment, the court will briefly discuss the factual and procedural background of this litigation, comment on the allocation of the burden of proof in ADEA actions and address the appropriate standards to be applied to Marriott's summary judgment motion.

### B. Factual Background

Holmes' claims arise from his July 13, 1990 termination of employment by Marriott as the director of services at Des Moines' Marriott Hotel. For purposes of Marriott's Motion for Summary Judgment only, the court finds that the following facts are undisputed. Holmes, was born on December 11, 1935 and began working in 1954 for Marriott as a car hop in a Marriott owned drive-in restaurant. Since then Holmes has held numerous positions with Marriott, including assistant manager of a small restaurant, night manager of a larger restaurant, night manager in the Cafeteria Division, marketing representative for a large Marriott-owned commissary, northeastern regional sales manager of Marriott's Fairfield Farm commissary, opening manager in Marriott's fast food division, a housekeeping trainee, a housekeeping manager, a public space manager and a director of services.

In early 1989, Holmes was working for Marriott's Tan–Tar–A resort property in Missouri as a public space manager. In that position Holmes was responsible for all of the public spaces in the Marriott's resort property.

In late April or early May of 1989, Holmes interviewed for the position of director of services at the Des Moines Marriott hotel. The director of services position was responsible for the complete direction, control and supervision of the hotel's housekeeping, laundry and recreation departments.

Holmes interviewed with resident manager Joseph Duperre, general manager Nick Smart, and other executive management team members of the Des Moines Marriott hotel. Holmes was offered and accepted the position of director of services for the Des Moines Marriott hotel. At the time Holmes interviewed and accepted the Des Moines Marriott hotel position of director of services, he was 53 years of age.

Holmes' initial supervisor was the resident manager, Joseph Duperre. Mr. Duperre's direct supervisor was the general manager, Nick Smart, who was later replaced by Hal Cook. On July 13, 1990, Holmes was terminated by Marriott. Holmes was terminated by general manager Hal Cook. He was the only individual at the Des Moines Marriott hotel facility who had the authority to terminate Holmes. The decision to terminate Holmes was based, in part, on the resident manager, Joseph Duperre's, recommendation to Cook to terminate Holmes. The reason advanced by Marriott for Holmes' termination was unsatisfactory job performance.

### C. Procedural Background

On March 9, 1993, the parties filed a consent to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). By prior order, April 1, 1993 was the deadline for filing dispositive motions. On July 23, 1993, more than three and one half months after the dispositive motion deadline Marriott filed Defendant's Application to Extend Dispositive Motion Deadline. The motion was unresisted and on July 26, 1993, I granted Marriott's Application to Extend Dispositive Motion Deadline and Marriott's summary judgment motion and supporting brief were filed on that date. As required by Local Court Rule 14(h), Defendant also filed its statement of undisputed facts. On August 13, 1993, Holmes filed his resistance and supporting brief resisting Marriott's motion for summary judgment. On August 24, 1993, I granted Marriott permission to file a reply brief in excess of the page limitation mandated by Local Court Rule 14(g).

This litigation is scheduled to commence for trial by jury on September 13, 1993. As is increasingly the case in summary judgment motions in federal court, the briefing and supporting documents filed by the parties are imposing. Here, they easily exceed several hundred pages. A hearing on Marriott's summary judgment motion and other pending motions was held on August 27, 1993. Holmes was represented by Des Moines attorneys Frederick W. James and Michael J. Carroll of Dwight W. James & Associates, P.C. Marriott was represented by Des Moines attorneys Philip H. Dorff, Jr. and Hugh Cain of Hopkins and Huebner, P.C.

The quality of the summary judgment briefs as well as oral argument has been exceptional and of great assistance to the court. Unfortunately, there is precious little time to resolve the important issues raised by the summary judgment motion in the very short period of time between the hearing on the summary judgment motion and trial. This is an excellent example of the conundrum created by allowing parties to move for summary judgment well past the initial deadline for doing so and on the eve of trial. Counsel for both parties have obviously engaged in an enormous amount of work in advancing and resisting summary judgment. This has necessarily consumed considerable time, effort, energy and attorney fees. In this sense, it would be unfair to the parties not to rule on the motion or to artfully dodge it because of the time crunch. Additionally, meritorious summary judgment motions advance important judicial resource concerns by eliminating trials when they are unnecessary. On the other hand, hurriedly addressing last minute summary judgment motions rob the court of the time necessary to carefully evaluate, analyze and cogitate—sometimes necessary even when difficult issues are as well presented as they are here. I have done the best I could given the crushing time constraints.

### D. Burdens of Proof Under the ADEA

Under the ADEA, a plaintiff may establish age discrimination "by either direct or indirect methods of proof." *Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir.1991); *Blake v. J.C. Penney Co., Inc.*, 894 F.2d 274, 278 (8th Cir.1990). "The allocation of burden of proof in ADEA cases ... depends on whether a case is characterized as a 'pretext' case or as a 'mixed-motive' case." *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 447 (8th Cir. 1993).

 The premise of a pretext case "is that either a legitimate or illegitimate set of considerations led to the challenged decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247, 109 S.Ct. 1775, 1789, 104 L.Ed.2d 268 (1989); *Radabaugh*, 997 F.2d at 447. In a pretext case, the plaintiff carries the burden of establishing a *prima facie* case of discrimination utilizing the basic tripartite pattern of proof (*prima facie* case-rebuttal-pretext) as set forth in the *McDonnell Douglas–Burdine* framework.[2] *Beshears*, 930 F.2d at 1353. The plaintiff may establish a *prima facie* case by establishing that (1) he was within the protected age group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he was discharged; and (4) his employer attempted to replace him. *Radabaugh*, 997 F.2d at 447; *Beshears*, 930 F.2d at 1353; *Raschick v. Prudent Supply, Inc.*, 830 F.2d 1497, 1499 (8th Cir.1987), cert. denied, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988). Once the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions. *McDon-*

---

**2.** *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Although the action in *McDonnell Douglas* was brought under Title VII, the United States Court of Appeals for the Eighth Circuit "routinely applies the *McDonnell Douglas* approach in ADEA cases." *Beshears v. Asbill*, 930 F.2d at 1353, n. 7; *Hase v. Missouri Div. of*

*Employment Sec.*, 972 F.2d 893, 896 (8th Cir. 1992), cert. denied, —— U.S. ——, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993); *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 289 (8th Cir.1982), cert. denied, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983); *Tribble v. Westinghouse Elec. Corp.*, 669 F.2d 1193, 1196 (8th Cir.1982), cert. denied, 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983).

*nell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Radabaugh,* 997 F.2d at 448; *Beshears,* 930 F.2d at 1353. The plaintiff then has the opportunity to prove by a preponderance of the evidence that the employer's articulated legitimate nondiscriminatory reasons for its action are pretextual and that the plaintiff has, in fact, been a victim of intentional discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Radabaugh,* 997 F.2d at 448; *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25; *Beshears,* 930 F.2d at 1353. The plaintiff retains the burden of persuasion at all times. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Beshears,* 930 F.2d at 1353.[3]

Mixed-motive cases, by contrast, arise when the plaintiff establishes that an employment decision was "the product of a mixture of legitimate and illegitimate motives." *Price Waterhouse,* 490 U.S. at 247, 109 S.Ct. at 1788; *Radabaugh,* 997 F.2d at 448. "In a mixed motive case, the plaintiff has initial burden of proving that an illegitimate factor was a motivating factor in an employment decision adverse to the plaintiff." *Radabaugh,* 997 F.2d at 448 (citing *Beshears,* 930 F.2d at 1353). "Once a plaintiff has made this initial showing, the burden shifts to the employer to prove that it would have made the same decision even if it had not taken the illegitimate factor into account." *Id.* Stated another way, "[w]hen an employee produces direct evidence that an illegitimate criterion such as age 'played a motivating part in [the] employment decision,' *Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. at 1795, the burden shifting standards of *Price Waterhouse* come into play." *Beshears,* 930 F.2d at 1353. In such cases, the employer may avoid a finding of liability only by establishing by a preponderance of the evidence that it would have made the same

decision even if it had not utilized the illegitimate reason. *Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. at 1794 and *Beshears,* 930 F.2d at 1353.

Also, "[w]hether a case is a pretext case or a mixed-motives case is a question for the court once all the evidence has been resolved...." *Radabaugh,* 997 F.2d at 448. "If the plaintiff has failed to satisfy the *Price Waterhouse* threshold, the case should be decided under the principles enunciated in *McDonnell Douglas* and *Burdine* ...." *Radabaugh,* 997 F.2d at 448; *Beshears,* 930 F.2d at 1353 (citing *Price Waterhouse,* 490 U.S. at 278–79, 109 S.Ct. at 1805 (O'Connor, J., concurring)).

In *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the most recent decision by the United States Supreme Court discussing burden shifting in discrimination claims, the Court held that rejection of legitimate, non-discriminatory reasons for the challenged employment action articulated and proffered by the employer under the *McDonnell Douglas–Burdine* proof scheme will permit the trier of fact to infer the ultimate fact of intentional discrimination with no additional proof required. However, rejection of the employer's articulated and proffered reasons does not entitle a plaintiff to judgment as a matter of law. On remand, the United States Court of Appeals for the Eighth Circuit characterized the Supreme Court's holding in *Hicks* as follows:

> It is not enough, in other words, to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination. *St. Mary's Honor Center v. Hicks,* —— U.S. at ——, 113 S.Ct. at 2754. The Court cautioned, however that "[t]he factfinder's disbelief of the reasons put forward by the [employer] (particularly if disbelief is accompanied by a sus-

**3.** The reasoning behind the inference created by the establishment of a *prima facie* case in the tripartite pattern of proof was explained by the court in *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978):

> A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume that these acts, if otherwise unexplained, are more likely than not based on

the consideration of impermissible factors. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. . . .

*Id.* at 577, 98 S.Ct. at 2949–50.

picion of mendacity) ..., together with the elements of the prima facie case, ... will permit the factfinder to infer the ultimate fact of intentional discrimination, and ... that, upon such rejection, '[n]o additional proof of discrimination is required." *Id.* —— U.S. at ——, 113 S.Ct. at 2749 (footnote omitted), *citing* 970 F.2d at 493.

*Hicks v. St. Mary's Honor Center,* 2 F.3d 265, 266–67 (8th Cir.1993).

Finally, the United States Court of Appeals for the Eighth Circuit has recognized that the *McDonnell Douglas–Burdine* conceptual framework is not well-suited as a detailed instruction to the jury. In *Grebin v. Sioux Falls Indep. School Dist.,* 779 F.2d 18 (8th Cir.1985), the court held that the *McDonnell Douglas–Burdine* conceptual framework " 'add[s] little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination.' " *Grebin,* 779 F.2d at 20–21 (quoting *Loeb v. Textron,* 600 F.2d 1003, 1016 (1st Cir.1979)).

## II. SUMMARY JUDGMENT STANDARDS.

Marriott's motion for summary judgment is subject to the following well-established standards. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990) (citing Fed.R.Civ.P. 56(c)).[4] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Plaintiff Holmes, and give

Holmes the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991).

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini,* 900 F.2d at 1238. The Eighth Circuit, however, also follows the principle that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

Procedurally, Marriott bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552). Marriott is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. A nonmoving party is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there

---

4. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). A genuine issue of fact is

material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Martin v. ConAgra, Inc.,* 784 F.Supp. 1394, 1395 (S.D.Iowa 1992). The necessary proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Martin,* 784 F.Supp. at 1395.

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that the purpose of a summary judgment motion is to dispose of factually unsupported claims. The trial court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable jury could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247.

In the age discrimination context, "a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Moore v. Reese,* 817 F.Supp. 1290, 1295 (D.Md.1993) (citing *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 557 (5th Cir.1983), *cert. denied sub nom. Elliott v. Group Hosp. Service, Inc.* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984)). Rather, "the plaintiff must come forward with the independent facts establishing a material is-sue of fact in order to overcome the defendant's motion for summary judgment." *Moore,* 817 F.Supp. at 1295.

Having articulated the appropriate standards for determining Marriott's motion for summary judgment, the court now turns to the specifics of Marriott's motion.

## III. THE INFERENCE OF NONDISCRIMINATION ESTABLISHED IN *PROUD v. STONE,* 945 F.2D 796 (4TH CIR.1991) AND *LOWE v. J.B. HUNT TRANSPORT, INC.,* 963 F.2D 173 (8TH CIR.1992).

### A. Introduction

Marriott's first argument in support of its motion for summary judgment is based upon the fact that Holmes, who was 53 years of age at the time of his transfer from Missouri to the Des Moines Marriott hotel was discharged a little more then 12 months later. Thus Marriott argues there is an inference that should arise that the discharge was based on reasons other than Holmes' age. The genesis for Marriott's argument appears to be the decision in *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991), where the court held, "where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."

### B. The Rule Articulated in *Proud v. Stone,* 945 F.2d 796 (4th Cir.1991)

The factual basis for the court's holding in *Proud* was "the undisputed fact that the individual who fired Proud is the same individual who hired him less than six months earlier with full knowledge of his age." *Proud,* 945 F.2d at 797. Thus, because the ultimate question is whether age discrimination motivated the employer, "there is a powerful inference" that discrimination was not the motivating factor when the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring. *Id.* at 798.

The court in *Proud* elaborated on the relationship between this inference of nondiscrimination and the plaintiff's burden of proof when the court stated:

> The proof scheme involves three steps. First, the ADEA plaintiff must make out a prima facie case of discriminatory discharge. Once plaintiff has done that, defendant bears the burden to articulate a legitimate, nondiscriminatory reason for the action taken. If defendant meets that burden, plaintiff then has the burden to show that the proffered reason was pretextual. *Conkwright [v. Westinghouse Elec. Corp.],* 933 F.2d [231] at 234–35.
>
> The relevance of the fact that the employee was hired and fired by the same person within a relatively short time span comes at the third stage of the analysis. To reiterate in only slightly different terms what has previously been discussed, this fact creates a strong inference that the employer's stated reason for acting against the employee is not pretextual. The plaintiff still has the opportunity to present countervailing evidence of pretext, but in most cases involving this situation, such evidence will not be forthcoming. In short, employers who knowingly hire workers within a protected group seldom will be credible targets for charge of pretextual firing.

*Id.* at 798.

Finally, the court in *Proud* quite correctly observed that their articulation of the strong inference of nondiscrimination arising from the relatively unique fact situation where a member of a protected class is hired and fire by the same decision maker within a relatively short time span "advances the aims of the statute." *Id.* The court recognized that "[i]f former employees in these situations bring ADEA claims that are allowed to proceed to trial ... there is a grave risk that employers who otherwise would have no bias against older workers will now refuse to hire them in order to avoid meritless but costly ADEA actions." *Id.* The court concluded that "[c]ourts must promptly dismiss such insubstantial claims in order to prevent the statute from becoming a cure that worsens the malady of age discrimination." *Id.*

In arriving at this strong inference of nondiscrimination in cases where the plaintiff is hired and fired by the same individual in a relatively short time span, the court in *Proud* did not foreclose a situation where facts could arise "which a discharge in this context could still be proven to have been discriminatory...." *Id.* at 798.

### C. The Eighth Circuit's Adoption of the Rule in Proud v. Stone, 945 F.2d 796 (4th Cir.1991)

The United States Court of Appeals for the Eighth Circuit has followed the rule in *Proud,* 945 F.2d 796 in *Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173 (8th Cir.1992). In *Lowe,* plaintiff James R. Lowe brought an action under the ADEA against his former employer, J.B. Hunt Transport, Inc. At the close of Lowe's evidence, the District Court granted Hunt's motion for directed verdict and dismissed the complaint with prejudice. *Lowe,* 963 F.2d at 173–74. In affirming the trial court's granting of a directed verdict, the Eighth Circuit observed:

> The evidence that plaintiff claims is inconsistent with defendant's proffered justification is thin, but perhaps sufficient, all other things being equal, to defeat to motion for directed verdict. In the present case, however, all other things were not equal. The most important fact here is that plaintiff was a member of the protected age group both at the time of his hiring and at the time of his firing, and that the same people who hired him also fired him. *Proud v. Stone,* 945 F.2d 796 (4th Cir. 1991). If plaintiff had been forty when he was hired, and sixty-five when he was fired, obviously this fact would not be so compelling. But here, the lapse of time was less than two years. It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later.
>
> . . . . .
>
> The short time plaintiff worked for the defendant, his age when hired, and the

identity of those who hired and fired him are, in the particular circumstances of this case, fatal to his claim.

*Lowe,* 963 F.2d at 174–75.

It is clear, however, that the rule in *Proud–Lowe* should not be applied in an ironclad fashion. *Proud* recognized that even in situations where the inference of discriminatory animus is unwarranted, due to the hiring and firing by the same decision maker in a relatively short time span, the plaintiff must still be provided an opportunity to establish that the employer's articulated legitimate nondiscriminatory reasons for the dismissal are pretextual. *Proud,* 945 F.2d at 798. The outcome in *Lowe* was necessarily based in part on "the weakness of plaintiff's evidence . . ." [of discriminatory intent], and "the particular circumstances of this case." *Lowe,* 963 F.2d at 175.

Thus, in *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 548 (8th Cir.1993), the court declined to impose the inference of nondiscrimination articulated in *Proud* and adopted in *Lowe.* The court reversed the trial court's granting of summary judgment to a defendant that hired the plaintiff in 1989 at age 55 and then allegedly fired her because of her age less than two years later. *Johnson,* 994 F.2d at 548. The court held that "we believe it is credible that Siegal would hire Johnson in 1989, make use of Johnson's experience during the transition period and then terminate her because of her age." *Id.*

### D. Application of the Rule in Proud–Lowe to Marriott's Summary Judgment Motion

The thrust of Holmes' argument that the inference of nondiscrimination recognized in *Proud–Lowe* should not apply in this case is based on two independent arguments. First, Holmes argued that because he transferred within the Marriott Corporation to the Des Moines Marriott hotel there was no initial hire within a relatively short time span and the doctrine articulated in *Proud–Lowe* has no application to him. Secondly, Holmes argues that because he was not both hired and fired by the same decision maker the rule of *Proud–Lowe* should not be applied to Holmes.

#### 1. Holmes' Intra–Corporate Transfer

Holmes correctly observes that the factual patterns in both *Proud–Lowe* involved a new hire and subsequent discharge in a short time span rather than an intra-corporate transfer. While this distinction is an accurate one, the court believes it is a distinction without a difference. Under the facts presented by Holmes, his transfer from the totally separate Marriott facility in Missouri to the Des Moines Marriott hotel was, for purposes of the application of the rule in *Proud–Lowe,* analogous to an initial hire. For example, Holmes interviewed with Des Moines Marriott hotel resident manager Joseph Duperre for the position. Before offering Holmes the position, Duperre requested that Holmes interview with Nick Smart, the general manager and other members of the management team. Following these interviews, Holmes was offered the position.

Holmes has failed to assert a factual justification—and the court is unable to identify one—that would justify rejecting the application of the rule in *Proud–Lowe* to intra-corporate transfers. Rather, Holmes asserts a policy objection. Holmes argues that adopting the rationale of *Proud–Lowe* to intra-corporate transfers would mean that "older workers might well be inclined to remain stagnant in a position after they reach the protected age of 40." Pl.Br. in Resistance to Def.Mot. for Summ.J. at 9. Holmes then makes the following giant leap: "Following the Defendant's interpretation of the law, the Defendant corporation would rarely, if ever, be amenable to suit under the ADEA because managerial employees in this corporation often change jobs periodically." *Id.* at p. 9.

The specter raised by Holmes of corporate immunity from ADEA litigation in intra-corporate transfers of employees in the protected age category is illusory. Nothing in the rule of law announced in *Proud–Lowe* prevents an employee from asserting a claim under the ADEA when the employee can muster evidence of age based discriminatory intent. Rather, the *Proud–Lowe* rule cre-

ates a common sense inference that where the same decision maker hires a protected class worker and then discharges the same worker in a relatively short time span, there is an inference that discrimination was not a determining factor in the discharge decision. As the court in *Proud* recognized but Holmes fails to appreciate—this rule advances rather than hinders the goal of eradicating age discrimination in the workplace. Likewise, the rule encourages rather than discourages intra-corporate transfers of protected age workers by providing employers with a reasoned inference that no discrimination occurs when a recently hired worker is discharged by the same decision maker. Therefore, the court concludes that there is no factual basis or policy reason based upon the legislative intent of the ADEA, not to apply the *Proud–Lowe* rule to intra-corporate transfers.[5]

### 2. The Requirement of the Same Decision Makers

■ In *Proud*, the same individual, Robert W. Klauss, the central accounting officer, both hired and fired plaintiff Warren A. Proud. *Proud*, 945 F.2d at 796–97. The court in *Proud* observed "we focus on the undisputed fact that the individual who fired Proud is the same individual who hired him less than six months earlier with full knowledge of his age." *Id.* at 797. In *Lowe*, the court observed that "[t]he most important fact here is ... that the same people who hired him also fired him." *Lowe*, 963 F.2d at 174.

Marriott asserts the following in an attempt to bring the facts underlying Holmes' hiring and firing within the rule of *Proud* and *Lowe:*

The Plaintiff's case falls into the same category. Holmes was hired by local Des Moines Marriott officials when he was 53 years old. He was fired shortly thereafter by the hotel's general manager. Since all

the management team would have known that the Plaintiff was in a protected age category at the time he was hired, it does not make sense that those same individuals would terminate the Plaintiff allegedly because of his age shortly thereafter.

Def.Br. in Supp. of its Mot. for Summ.J. at 5. Not surprisingly, Holmes takes a different vie of this matter. He states:

The other assertion the Defendant makes, that Holmes was hired and fired by the same supervisor, is also untenable. Holmes interviewed at the Des Moines hotel and was offered the job by Joe Duperre. In addition, Nick Smart was the hotel's General Manager at the time of the hire. The person ultimately responsible for the termination of Holmes' employment was Hal Cook, the person who took over Smart's job when Smart transferred elsewhere. Therefore, Holmes was not hired and fired by the same person.

Pl.Br. in Resistance to Def.M. for Summ.J. at 10–11 (citations omitted).

Holmes was terminated by general manager Hal Cook, who was not employed at the Des Moines Marriott hotel facility at the time of Holmes' initial hire. Indeed, Marriott's position in this litigation is that only general manager Cook had the actual authority to discharge Holmes. Counsel for Marriott stated at the summary judgment hearing that for purposes of their summary judgment motion, Marriott concedes Cook relied on Joseph Duperre's recommendation in making the decision to terminate Holmes. While Duperre was involved in Holmes' initial hiring, there is a material question of fact as to the extent of reliance by Cook on Duperre's recommendation to terminate Holmes. This, as well as Holmes' direct evidence of discrimination, discussed below, precludes granting Marriott's motion for summary judgment on this issue.

---

5. At oral argument on Marriott's summary judgment motion, Holmes' counsel postulated that application of the *Proud–Lowe* rule to intra-corporate transfers would provide an easy subterfuge for employers. Employers would simply transfer unwanted employees within the protected age group and quickly dismiss them so as to utilize the inference of the *Proud–Lowe* rule.

This court is unwilling to ascribe such a sinister and pervasive motive to employers sufficient to carve an across the board exception for intra-corporate transfers out of the *Proud–Lowe* rule. Of course, an exception may be made in any case where the evidence warrants it—this is not such a case.

### 3. Holmes' Direct Evidence of Discrimination

More importantly, Holmes' allegations of discriminatory statements made by the decision makers distinguish his case from that in *Lowe* where the court recognized the weakness of plaintiff's evidence of discriminatory intent. *Lowe*, 963 F.2d at 175. This evidence of discriminatory statements also entitles Holmes an opportunity to establish pretext—a factor recognized by the court in *Proud*, 945 F.2d at 798.

In sum, if this were a case in which Holmes was simply relying on the *prima facie* inference of discrimination created by the *McDonnell Douglas–Burdine* framework to establish that Marriott's articulated non-discriminatory reason is pretextual, the court would have no trouble applying the rule in *Proud–Lowe* and grant Marriott's motion for summary judgment. However, Marriott has failed to establish in this summary judgment proceeding its burden of proof that there is no material question of fact in the third stage of the analysis. That is, Marriott has failed to establish that there are no material questions of fact regarding whether its asserted legitimate nondiscriminatory reasons are pretextual. Thus, even if the rationale of *Proud–Lowe* applied because Holmes was terminated by the same decision makers, it would be for the jury to decide whether the inference raised by the rule of *Proud–Lowe* could be overcome by Holmes' asserted direct evidence of discrimination based upon discriminatory statements of the decision makers. This is not only a material question of fact, it goes to the very heart of the ultimate issue in this litigation—was Holmes discharged based upon his age.

### IV. STATEMENTS OF MARRIOTT EMPLOYEES—ARE THEY "STRAY REMARKS," REMARKS UNRELATED TO ACTUAL AGE–BASED DISCRIMINATION, REMARKS NOT ATTRIBUTABLE TO THE DECISION MAKERS OR ARE THEY DIRECT EVIDENCE OF AGE DISCRIMINATION.

#### A. Introduction

Marriott has moved for summary judgment on the grounds that several statements Holmes contends were made by employees of Marriott, allegedly establishing direct evidence age discrimination, are not attributable to the decision makers nor do the statements themselves show actual age based discrimination. Thus, implicit in Marriott's argument is that Holmes has failed to generate a material question of fact that age was a motivating factor in his termination and, therefore, Marriott is entitled to summary judgment.

Procedurally, this issue in the context of summary judgment is made more complex here by the lack of specificity and agreement among the parties as to what comments, made by whom, were made when. The comments which purportedly are subject to this portion of Marriott's motion for summary judgment are not set forth in their statement required by Local Court Rule 14(h) of undisputed material facts as to which the moving party contends there is no genuine issue to be tried. Holmes does allude to "statements made by Mr. Cook and Mr. Duperre regarding Plaintiff's age" in their Statement of Disputed Facts in Support of Plaintiff's Resistance to Defendant's Motion for Summary Judgment but fail to identify any information concerning the statements in that pleading. Rather, the court is left to sift through the briefs and supporting documentation in an effort to identify which statements are at issue in this portion of Marriott's motion for summary judgment.

In its brief, Marriott identifies the following statements which it contends Holmes conceded in his deposition were made only by Joseph Duperre: that Holmes was "senile"; that Holmes was "too old to cut it"; and that Holmes was "not as young as he used to be." Br. in Supp. of Def.M. for Summ.J. at 5–6.

In an affidavit by Holmes attached to his brief in resistance to Marriott's motion for summary judgment, Holmes makes the following assertions with regard to statements of discriminatory intent:

19. In addition to depriving me of the opportunity to do my job in an adequate fashion, Mr. Duperre also made various comments regarding my age. I consider these to be far more than just offhand or

stray comments. For instance, on more than one occasion, Mr. Duperre told me that I was "senile." On another occasion, Mr. Duperre asked me whether I was "getting too old to cut it?" Even though he was causing much of my difficulties at the Des Moines Marriott, Mr. Duperre also told me, "Well, if you can't get done, maybe you're not as young as you used to be." Mr. Duperre also told me, "You're getting expensive. You've been around a lot of years, too." Mr. Duperre also made comments in regards to the age marks on my face. He made reference to them in asking whether they bothered me. He also made reference as to my ability to work directly with customers because of the age marks on my face.

20. Hal Cook asked about my plans for retirement, and he once suggested I consider working in the Senior Living Division of Marriott.

21. Another comment made regarding my age by Mr. Duperre was, "I don't think you've got the energy to do all you've got to do."

Aff. of Phil Holmes at 6 (attached to Pl.Br. in Resistance to Def.M. for Summ.J.).

### B. Stray Remarks

Marriott attempts to characterize Holmes' assertion of statements of Marriott's employees as "stray remarks." The stray remarks doctrine has its genesis in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).[6] Comments suggesting that the employer may have considered impermissible factors are often relevant to a disparate treatment claim. *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir.1990). "On the other hand 'stray' remarks are insufficient to establish discrimination." *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 277 and 280, 109

S.Ct. 1775, 1791, 1804 and 1806, 104 L.Ed.2d 268 (1989)).

Numerous decisions, many of them relied upon by Marriott, have held that specific statements of employees are "stray remarks" and, thus, not evidence of discrimination. *See e.g., Turner v. North American Rubber, Inc.*, 979 F.2d 55, 58–59 (5th Cir.1992) (reference by boss to "three young tigers" being sent to assist plaintiff more than one year before his discharge held not related to plaintiff's age or his discharge); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378–79 (5th Cir.1991) (comment by retired president of corporation that his son who succeeded him would "need to surround himself with people his age" held to be a stray remark because of the vagueness, remoteness in time and administrative hierarchy to personnel decision), *cert. denied sub nom., Guthrie ex. rel. Guthrie v. Tifco Indus.*, —— U.S. ——, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992); *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438–39 (9th Cir.1990) (remark by decision maker that he chose another individual over plaintiff because the other individual was "a bright, intelligent, knowledgeable young man," is a stray remark); *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314–16 (6th Cir.1989) (finding that a "single, isolated discriminatory comment" by plaintiff's immediate supervisor was insufficient to trigger burden shift or to avoid summary judgment for defendant); *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir.1989) (noting that stray "remarks, ... when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria even when such statements are made by the decision maker in issue.").

There appears to be no unified test for determining whether certain statements fall within the stray remarks doctrine. Rather, as the above cases demonstrate, courts look to the relationship between the remarks and

**6.** Justice O'Connor stated in her concurring opinion that "stray remarks in the workplace—cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. at 1804. Also, both the plurality opinion of Justice Brennan and the dissenting opinion of Justice Kennedy refer to stray remarks. Justice Brennan emphasized that "the

stereotyping in this case did not simply consist of stray remarks." *Id.* at 251, 109 S.Ct. at 1791. The dissenting opinion of Justice Kennedy recognized that "[a]s the opinions makes plain, the evidentiary scheme created today is not for every case in which a plaintiff produces evidence of stray remarks in the workplace." *Id.* at 280, 109 S.Ct. at 1806.

the decisional process, the age-based substance of the statements, the specificity of the statements both with regard to the actual employment decision at issue such as hiring, promotion or termination, as well as the relationship to the remark and the plaintiff's situation, and remoteness in time to the personnel decision. Several recent decisions from the United States Court of Appeals for the Eighth Circuit, *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444 (8th Cir.1993); *Kehoe v. Anheuser–Busch, Inc.,* 995 F.2d 117 (8th Cir.1993); *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541–42 (8th Cir.1991); *Beshears v. Asbill,* 930 F.2d 1348 (8th Cir. 1991); *Blake v. J.C. Penney Co., Inc.,* 894 F.2d 274, 276–78 (8th Cir.1990), substantially assist in defining the contours of the stray remarks doctrine in our circuit.

In *Radabaugh,* 997 F.2d at 448, the court held:

> Not all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision. In *Beshears,* we distinguished "[c]omments which demonstrate a 'discriminatory animus in the decisional process' or those uttered by individuals closely involved in employment decisions," 930 F.2d at 1354 (citation omitted) (quoting *Price Waterhouse,* 490 U.S. at 278, 109 S.Ct. at 1805 (O'Connor, J., concurring)), from " 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process,' " *id.* (quoting *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1804–05 (O'Connor, J., concurring)).

*Id.* In affirming the trial court's denial of *Zip Feed's* post trial motions, on the grounds that the jury should not have been given a *Price Waterhouse* instruction and that the evidence was insufficient to support the jury's verdict of age discrimination, the court analyzed the following statements made by Zip Feed management employees: the president of Zip Feed repeatedly made the statement that the company was "young, mean and lean;" his suggestion made sometime after discharging Radabaugh that Radabaugh "might want to consider retiring;" and

his statement that Radabaugh "should have seen this coming when the (26 year old) nutritionist was hired." *Id.* at 449. The court held that these statements, in addition to other evidence presented by Radabaugh reflected "a discriminatory attitude on the part of the persons responsible for the decision to discharge him. This evidence was sufficient to support a finding that a discriminatory animus was a motivating factor in Zip Feed's decision." *Id.* at 450.

In *Kehoe v. Anheuser–Busch, Inc.,* 995 F.2d 117 (8th Cir.1993), the court reversed the trial court's granting of summary judgment; holding that the employee had made out a *prima facie* case of age discrimination by generating material issues of fact as to whether reasons for the discharge were pretextual. *Id.* at 119–20. A portion of the evidence relied upon by the court in reversing the district court were statements made by the plaintiff's senior manager that he and an older co-worker were "moochers," a phrase which a co-worker who submitted an affidavit on behalf of the plaintiff "interpreted as equating Mr. Kehoe with someone who is retired." *Id.* at 119.

In *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541–42 (8th Cir.1991), the court discussed several comments made to Frieze by Boatmen employees which Frieze contended created an inference of age discrimination. *Id.* at 541. Four years prior to Frieze's discharge, Edwin Hartzler, who discharged Frieze, told him that he "waited too long ... to start [his] efforts towards becoming president of a bank and [Frieze] would never make it." *Id.* Hartzler had not yet become president at the time of the statement and made it in the context of a general discussion with Frieze about personal goals. *Id.* Jerry Martin, a senior vice president and the bank's cashier, also told Frieze that he "was too old and ... had too little rank ... [to become] president of a bank." *Id.* at 541. When Frieze was discharged by Hartzler, Hartzler "suggested Frieze could not work within the bank's framework." *Id.* Regarding these various statements, the court held that:

> Martin's and the cashier's comments do not create a reasonable inference of age

discrimination because Martin and the cashier did not take part in the decision to discharge Frieze.... Hartzler's statement about Frieze's chances to become president of a bank does not create a reasonable inference of discrimination because Hartzler made this stray remark more than four years before he discharged Frieze.... Similarly, Hartzler's statements about Frieze not being able to fit into the bank's framework are too vague to create a reasonable inference of age discrimination.

*Frieze,* 950 F.2d at 541–42 (citations omitted).

In *Beshears,* 930 F.2d at 1348, the court held that the statement by the president of the employer that "older employees have problems adapting to changes and to new policies," and a statement by another official involved in the employment decisions that plaintiff's position "had been offered to a younger man and explained that younger people were more adaptable" to corporate policies "were not stray or random comments: they were made during the decisional process by individuals responsible for the very employment decisions in controversy." *Beshears,* 930 F.2d at 1354.

In *Blake v. J.C. Penney Co., Inc.,* 894 F.2d 274, 276–78 (8th Cir.1990) statements that plaintiff was a "senile old woman" and "senile old thing" were held to be evidence of age discrimination where employer tolerated such age-directed insults. *Id.* at 278.[7]

Before analyzing the statements at issue here to determine whether they constitute stray remarks and thus lack any probative value in establishing discriminatory intent, the court will address Marriott's argument that the statements at issue are not evidence of age discrimination.

## C. The Contents of the Statements At Issue

Marriott asserts the following contention in its brief that various statements alleged by

Holmes are not evidence of age discrimination:

> The Plaintiff contends that Marriott officials indicated that he was "senile", ... that he was "too old", ... and that they inquired how long he was going to continue to work.... These comments have nothing to do with age discrimination and may not be considered as direct evidence of age discrimination.

Br. in Supp. of Def.M. for Summ.J. at 8–9 (citations omitted).

The primary thrust of Marriott's argument is that these statements "are not evidence of age discrimination. Rather, they reference only characteristics that are sometimes associated with age." *Id.* at 12–13. For example, Marriott asserts that the statement attributable to Joseph Duperre and directed towards Holmes "getting too old to cut it?" is "nothing more than a reference to Plaintiff's deteriorating physical condition. That is merely one of the unfortunate characteristics of increasing age." *Id.* at 13.

At least in the abstract, there is considerable support in the case law for Marriott's position. The First Circuit's decision in *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979), is the seminal case articulating the "diminished vigor" rationale. There, the court stated, "Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence." *Id.* at 1016. A number of federal courts have held that statements made in the course of employment decisions involving older employers are not evidence of age discrimination when the statements refer to nondiscriminatory traits that often accompany advancing age. *See, e.g., Young v. General Foods Corp.,* 840 F.2d 825 (11th Cir.1988) (statements that plaintiff lacked the "wherewithal" to perform his job, "moved in slow motion," and was "proactive" on the job held to be not evidence of age discrimination), *cert. denied* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989);

---

7. In *Samarzia v. Clark County,* 859 F.2d 88, 91 (9th Cir.1988), am., 866 F.2d 1185 (1989), the court held that supervisory and co-worker references to plaintiff as the "senile" intake officer constituted evidence of intentional discrimination. The court relied on this and other evidence in reversing the trial court's directed verdict. *Id.* at 91–92.

*Shostak v. United States Postal Serv.*, 662 F.Supp. 158, 161–62 (D.Me.1987) (comment that plaintiff was "too old for job" was not proof of age discrimination where comment was made when plaintiff was struggling with heavy mail bags, sweating and looking tired. Rather the court held that the statement reflected an opinion that plaintiff's age was making it difficult for him to perform an assigned task; it did not indicate any intention to discrimination because of age).

### D. Application of the "Stray Remarks" and the "Diminished Vigor" Rationale to the Statements at Issue

■ The court rejects Marriott's argument that the statements Holmes was "too old to do the job," and "senile" and "not as young as he used to be" may reasonably be interpreted only as references to characteristics that are sometimes associated with advancing age. Rather, these statements, while far from conclusively establishing evidence of age discrimination, may reasonably be interpreted by a jury as providing "support for an inference that age discrimination was a motivating factor in ... [the] decision to discharge ... [him]." *Radabaugh*, 997 F.2d at 449. While perhaps at odds with decisions from other courts, the court believes this holding is most consistent with the broad view of the age-related comments evidencing discriminatory intent reflected in *Radabaugh, Kehoe, Beshears* and *Blake*. This same holding applies to the alleged statements of Mr. Duperre regarding the age marks on Holmes' face.

■ On the other hand, the statement contributed to Hal Cook asking about Holmes' retirement plans, without more, is not evidence of age discrimination and may not be relied upon by Holmes in attempting to prove age-based discrimination. The allegation that Cook inquired about Holmes' retirement plans is substantially different from the supervisor's suggestion to the plaintiff in *Radabaugh*, 997 F.2d at 449, that he "might want to consider retiring...." As the Seventh Circuit Court of Appeals recently noted in *Colosi v. Electri–Flex Co.*, 965 F.2d 500, 502 (7th Cir.1992), "a company has a legitimate interest in learning of its employee's plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct." *See, e.g., Danielson v. Fletcher*, 770 F.Supp. 388 (N.D.Ohio 1991) (rendering bench verdict in favor of employer and rejecting plaintiff's assertion that decision maker's question regarding retirement plans during interview with another employee was evidence of pretext because employers must be allowed to plan for future); *Murray v. Sears, Roebuck & Co.*, 722 F.Supp. 1500 (N.D.Ohio 1989) (granting employer's motion for summary judgment despite supervisor's inquiries about plaintiff's retirement plans did not constitute evidence of age discrimination); *Nixon v. Celotex Corp.*, 693 F.Supp. 547 (W.D.Mich. 1988) (granting summary judgment despite statement at time of reduction in force that "you've been with the company long enough to acquire enough points, you're eligible for retirement and ... this will not be a hardship on you"); *Mantione v. Ted Bates Advertising*, 38 Fair Empl.Prac.Cas. (BNA) 1457, 1985 WL 2516 (S.D.N.Y.1985) (granting summary judgment and stating that question of "Are you retiring" addressed to plaintiff was insufficient, isolated remark).

■ The statement attributed by Holmes to Cook that Holmes should consider working in the Senior Living Division of Marriott presents the closest question of all the statements at issue. The statement was made by the final decision maker fairly close in time to Cook's decision to discharge Holmes (Cook came to the Des Moines facility after Holmes began working there). This statement may give rise to a perfectly reasonable explanation by Cook. A jury may not find the statement to be evidence of discriminatory intent. However, the statement "might be taken to mean," *Radabaugh*, 997 F.2d at 449, (where this phrase was used three times in discussing possible inferences arising from three different statements) that Cook thought Holmes should work in the senior living division because of his age. It does seem rather odd that Cook would refer to this one division amongst what must be a plethora of divisions at Marriott. In any event, it is the jury that should decide which interpretation applies.

■ One final comment on the application of the stray remarks doctrine to the

708

facts of this case. Marriott attempts to neutralize all the statements attributable by Holmes to Joseph Duperre by arguing that he was not a decision maker—only Cook had full and final authority to discharge Holmes. This argument presents too truncated a view of workplace personnel decisions and is at odds with the reality of today's workplace where important personnel decisions often represent the collective judgment of several individuals. It is clear that Joseph Duperre was not the final decision maker—however, his recommendation as Holmes' direct supervisor undoubtedly played a role in the ultimate decision to discharge Holmes. This court is unable to determine the precise role Joseph Duperre played in the context of the summary judgment motion. Thus, in the parlance of summary judgment, there is a disputed question of material fact for the jury to decide.[8]

### V. MARRIOTT'S BUSINESS JUDGMENT

■ Marriott asserts it is entitled to summary judgment because this court may not second guess its business judgment in deciding to terminate Holmes based on his inadequate job performance. Marriott asserts that its decision to terminate Holmes was "a business decision which Marriott is entitled to make and which should not be second guessed by the courts." Br. in Supp. of Def.Mot. for Summ.J. at p. 16.

Indeed, the United States Court of Appeals for the Eighth Circuit recently held in *Walker v. AT & T Technologies*, 995 F.2d 846, 847 (8th Cir.1993), that on the record in that particular ADEA action it was reversible error for the district court to fail to give a "business judgment" instruction. Likewise, our circuit has held that the intent of the ADEA is not to review the correctness of employer's business decisions, *Bell v. Gas Serv. Co.*, 778 F.2d 512, 515 (8th Cir.1985),

and that "courts have no business telling Searle how to make personnel decisions, which may be objectively or subjectively based." *Neufeld v. Searle Lab.*, 884 F.2d 335, 340 (8th Cir.1989). *See also Jorgensen v. Modern Woodmen of Am.*, 761 F.2d 502, 505 (8th Cir.1985) (observing that "[t]he ADEA is not intended to be used as a means of reviewing the propriety of a business decision ...". *Smith v. Monsanto Chem. Co.*, 770 F.2d 719, 723 n. 3 (8th Cir.1985) (recognizing that an employer may develop arbitrary, ridiculous and even irrational policies as long as they are applied in a nondiscriminatory manner), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986). *See also Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986) (Courts do "not sit as a super-personnel department that reexamines an entity's business decisions."); *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.1987) ("No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere.").

Without question, as long as Marriott made a decision to terminate Holmes based on its business judgment and not on unlawful age discrimination, this court has no business reviewing that business judgment. However, here, the court has held that there is a material question of fact on Marriott's motivation and, therefore, the court may not use the business judgment rule to grant Marriott summary judgment in its favor. Marriott may, however, be entitled to a jury instruction on the question of business judgment.

### VI. MARRIOTT'S OFFER OF REINSTATEMENT—CONDITIONAL OR UNCONDITIONAL?

#### A. Introduction

■ Marriott has also moved for summary judgment to limit Holmes' back and

---

8. Marriott relies on *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir.1984), for its argument that statements made by individuals who recommend termination are not relevant if that individual is not the final decision maker. *La Montagne* is distinguishable from the facts here. In *La Montagne* the decision maker "alone decided to discharge La Montagne." *Id.* at 1412. Here, the facts indicate that Cook did not act alone but relied heavily on

the recommendation from Duperre. Also, in *Beshears*, 930 F.2d at 1354, the court focused on comments of individuals "closely involved in employment decisions" or "who actively participated in the personnel decisions at issue." *Id.* at 1354. Under the facts of this case, a jury could conclude that Joseph Duperre was an individual closely involved in the employment decision to terminate Holmes.

front pay damages [9] by asserting on May 20, 1991, they tendered to Holmes an unconditional offer of reinstatement. Pursuant to *Ford Motor Co.*, 458 U.S. at 241, 102 S.Ct. at 3070, "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential back pay liability." *See, e.g., Morris v. American Nat. Can Corp.*, 952 F.2d 200, 202 (8th Cir.1991). Although this rule was fashioned in the Title VII [10] context, it applies with equal force under the ADEA because it is consistent with the ADEA policy to encourage "defendants promptly to make curative, unconditional job offers to ... [ADEA] claimants, thereby bringing defendants into 'voluntary compliance' and ending discrimination far more quickly than could litigation proceeding at its often ponderous pace." *Ford Motor Co.*, 458 U.S. at 228, 102 S.Ct. at 3064.

Holmes' obligation "to accept an offer of reinstatement is based on the general rule that a discharged employee must mitigate damages by using 'reasonable diligence in finding other *suitable* employment'." *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1202 (7th Cir.1989) (citing *Ford Motor Co.*, 458 U.S. at 231, 102 S.Ct. at 3065.) "Under the ADEA, a claimant wrongfully discharged must use reasonable efforts to mitigate damages." *Glass v. IDS Fin. Serv., Inc.*, 778 F.Supp. 1029, 1075 (D.Minn.1991) (citing *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir.1982)).

Marriott asserts that the May 20, 1991 correspondence from George J. Palladino, regional director of human services, to Holmes constitutes an unconditional offer of reinstatement as defined by *Ford Motor Co.*, 458 U.S. 219, 102 S.Ct. 3057. This letter stated:

Dear Mr. Holmes:

Please be advised that, effective immediately, we hereby extend to you an unconditional offer to return to your former position with Marriott at the Des Moines Marriott. You will be compensated at the same wage rate and be provided with the same level of benefits you enjoyed during your employment with the company.

I would also like to confirm again the offer I made to you in April, 1991 regarding a transfer to the Tan–Tar–A Marriott to the former position that you held at that hotel before transferring to the Des Moines hotel.

Please be advised that, effective immediately, we hereby also extend to you an unconditional offer to return to your former position with Marriott at the Tan–Tar–A Marriott. You will be compensated at the same wage rate and be provided with the same level of benefits you enjoyed while working at the Des Moines Marriott.

By accepting either unconditional offer, you are not obligated to discontinue any legal action pending against the Company to which you are a party. At the same time, please understand that the Company expressly denies any liability to you in any such actions and preserves any and all claims and defenses available to it. We would appreciate your response in writing to this unconditional offer of reinstatement.

The Company prohibits discrimination in the workplace and will ensure that upon your return to work you will be treated fairly.

Sincerely,

George J. Palladino

Regional Director of Human Resources

In response to the May 20, 1991 letter from Palladino, Holmes, through counsel, responded on June 12, 1991 as follows:

Dear Ms. Culver and Mr. Palladino:

I have had an opportunity to review Mr. Palladino's correspondence of May 20, 1991 and discuss its contents with Mr. and Mrs. Holmes. Mr. Holmes is willing to return to work for Marriott at the Tan–Tar–A Resort location with the following caveats:

1) Return to pay grade 49;

---

**9.** At the hearing on Marriott's motion for summary judgment held on August 27, 1993, the parties conceded that a valid unconditional offer of reinstatement under *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), would also bar front pay.

"Front pay is an award of future lost earnings to make a victim of discrimination whole...." *Klein v. Secretary of Transp.*, 807 F.Supp. 1517, 1525 (E.D.Wash.1992).

**10.** 42 U.S.C. § 2000e–5(g).

2) Receive all back wages together with annual and sick leave vested that Mr. Holmes would have enjoyed had he been working, plus accrued leave since April 30, 1991;

3) Return to Estate No. 446 that Mr. and Mrs. Holmes had previously occupied and assume the balance of the mortgage with the condition that the house received a rating of excellent and that Marriott take all necessary steps to assure it does;

4) That Marriott Corporation pay to the Burton Dunke Company as purchase of the lot on which house No. 446 is located so that the Holmes' will be relieved of the land rent and own a home which is not depreciating in value;

5) That Mr. Holmes remain in his current position at Tan–Tar–A until May 1, 1994 at which time Mr. Holmes will remain on Marriott's payroll, and they will transfer him to the Southeastern part of the United States to a corporate-owned Marriott facility.

6) That you reimburse Mr. Holmes $27,-000.00 to relieve him of the cost in relocating to North Carolina from Iowa before he begins work at Tan–Tar–A;

7) That you cover Mr. Holmes' relocation expenses from North Carolina back to Marriott Tan–Tar–A in Missouri;

8) That Mr. Holmes be given the opportunities he would have been provided in December 1990 to continue to participate in the employee's stock purchase program at 10 percent of earnings retroactive to the start of 1991, as well as the 29 shares he is still owed from 1990. Along with this he should also be provided the election for profit sharing variable to fixed ratio that he should have been provided in December 1990. If the latter is not possible that he be compensated with deferred Marriott stock, to make up the difference should there be any in January 1992;

9) Any and all professional fees incurred to date to the separation from his job with Marriott and his relocation to Missouri;

10) No break or interuption [sic] in service with the company;

11) Payments due, if any, to bridge insurance coverage and to keep the policy in force; and

12) Credit of five (5) days equivalent annual salary to Benetrade up front before returning to Tan–Tar–A.

It is understood that Marriott will take no retaliatory action against Mr. Holmes upon his return to Tan–Tar–A. Also, as has been agreed to prior, should we not be able to reach some kind of agreement, these matters in order to resolve this matter will not be admissible in any further action.

It would be in everyone's best interest to get this matter resolved and put behind them. Your offer to re-employ Mr. Holmes at Tan–Tar–A along with the above is an extremely fair, workable and just result for all parties involved.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

Frederick W. James

Holmes contends that the May 20, 1991 letter from Mr. Palladino is inadmissible under Federal Rule of Evidence 408 to establish Marriott's contention that it is an unconditional offer of reinstatement. Pl.Br. in Resistance to Def.M. for Summ.J. at 27–30. Alternatively, Holmes argues that if the offer is admissible, a fact question exists as to whether it was an unconditional offer of reinstatement. *Id.* at 30–33.

### B. The Admissibility of Marriott's Offer of Reinstatement to Holmes

 Holmes' argument that Federal Rule of Evidence 408 [11] bars the admissibility of

---

11. Federal Rule of Evidence 408 states:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity or the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admis-

the May 20, 1991 letter is premised on a single citation to authority—*Pierce v. F.R. Tripler & Co.*, 955 F.2d 820 (2nd Cir.1992). Holmes cites the following passage in *Pierce* in support of its argument:

> Evidence that demonstrates a failure to mitigate damages goes to the "amount" of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408. Under Fed.R.Evid. 104(a) preliminary factual questions concerning the admissibility of evidence, such as whether an offer was made in the course of settlement negotiations, are to be determined by the court.

Pl.Br. in Res. to Def.M. for Summ.J. at 27–30. Holmes' reliance on the decision in *Pierce* inapposite. Most importantly, the settlement offer at issue in *Pierce* was held by the court to be not "unambiguously unconditional...." *Pierce*, 955 F.2d at 826. Thus, the settlement offer clearly fell within the language of Federal Rule of Evidence 408 and was an offer made "in compromising or attempting to compromise a claim." Fed. R.Evid. 408; *Pierce*, 955 F.2d at 827. Here, if the court finds that the May 20, 1991 letter from George J. Palladino to Holmes is an unconditional offer of reinstatement—there is simply nothing in Federal Rule of Evidence 408 that would bar its admissibility. It is precisely because an unconditional offer of reinstatement is not made "in compromising or attempting to compromise a claim" that true unconditional offers of reinstatements clearly fall outside the coverage of Federal Rule of Evidence 408. Indeed, otherwise it would be impossible for an employer to establish that an unconditional offer of reinstatement was made. In sum, Federal Rule of Evidence 408 does not bar the admissibility of the May 20, 1991 offer of reinstatement, if the court holds it is an unconditional offer of reinstatement under *Ford Motor Co.*, 458 U.S. at 219, 102 S.Ct. 3057.

## C. The May 20, 1991 Offer of Reinstatement to Holmes

The court holds that the May 20, 1991 letter from Palladino to Holmes constitutes an unconditional offer of reinstatement. Holmes has simply failed to generate a material question of fact on the unconditional nature of the offer contained in this letter. Indeed, at the summary judgment hearing on August 27, 1993, Holmes' counsel conceded there was nothing about the content of the May 20, 1991 Palladino letter that was anything but an unconditional offer of reinstatement. Rather, counsel argued that in the context of the various settlement discussions, the offer was not unconditional. The court rejects this argument.

The May 20, 1991 Palladino letter specifically advised Mr. Holmes that "effective immediately" Marriott is extending to him "an unconditional offer to return to your former position with Marriott at the Des Moines Marriott." The letter further indicates he would be compensated "at the same wage rate" and provided with the "same level of benefits." Additionally, as an option, the letter provides the same unconditional offer to return to his former position at the Marriott at Tan–Tar–A Marriott in Missouri. Most importantly, the letter specifically advises Holmes that "[b]y accepting either unconditional offer, you are not obligated to discontinue any legal action pending against the Company to which you are a party." In sum, there is simply nothing about the offer of reinstatement that a trier of fact could find would be anything but unconditional. Holmes' claim that the May 20, 1991 offer was a "veritable sham put forth to circumvent liability imposed by the ADEA" (Pl.Br. in Resistance to Def.M. for Summ.J. at 39) is unsupported by any factual basis. Likewise, Holmes' counsel's statement at the August 27, 1993 summary judgment hearing that Marriott's offer of reinstatement was "insincere" is equally without any factual support.

sible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered

for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Holmes also argues that a subsequent letter dated June 18, 1991 from Anna Mary Culver, counsel for Marriott, which is in response to his counsel's June 12, 1991 letter, undermines the unconditional nature of the May 20, 1991 Palladino letter. That letter discusses "a settlement agreement that would include a waiver and release of all claims." While the parties were unable to provide a clear explanation of this phrase at the summary judgment hearing, for two independent reasons the court is unwilling to give it the meaning advanced by Holmes. First, the subsequent letter from Marriott's Iowa counsel, dated July 25, 1991, clearly indicated that "Marriott's unconditional offer of reinstatement conveyed to Mr. Holmes in George Paladino's [sic] letter of May 20, 1991 remains open." Thus, Holmes cannot argue in good faith that the July 25th letter created any ambiguity regarding the unconditional nature of the May 20th offer. Secondly, Holmes essentially had three choices when he received the May 20, 1991 unconditional offer of reinstatement. He could have accepted it, rejected it, or sought a clarification of it. *Graefenhain*, 870 F.2d at 1203 ("Only after receiving an appropriate detailed offer is a discharged employee required either to accept the offer or to provide specific reasons why it is inadequate"). At the hearing on the summary judgment motion Holmes' counsel attempted to characterize his June 12, 1991 response to the May 20, 1991 Palladino letter as an effort at clarification of the offer of reinstatement. This characterization is rejected by the court. Rather, the court concludes that Holmes' June 12, 1991 response to Marriott was a counter-offer and thereby a rejection of the May 20, 1991 unconditional offer of reinstatement. Thus, in this sequence of events, the July 15th letter becomes irrelevant.

Finally, paragraph 23 of Holmes' affidavit in support of his resistance to Defendant's motion for summary judgment fails to generate a material question of fact concerning

Marriott's unconditional offer of reinstatement. Holmes' claim that it would have been financially impossible to return to Iowa or Missouri without the company's help is a conclusory allegation unsupported by any factual basis. Also, Holmes' brief, while discussing the fact that Holmes had moved more than 1,000 miles from Iowa, fails to specifically assert that this move constituted a "special circumstance" under *Ford Motor Co.*, 458 U.S. at 241, 102 S.Ct. at 3070.[12] In this regard, the holding of the United States Court of Appeals for the Eighth Circuit in *Fiedler*, 670 F.2d 806 (1982) is applicable here:

> Generally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement. On its face, Indianhead's offer would have restored Fiedler to the position he held when he was terminated without any loss of back pay or benefits. On the motion for summary judgment Fiedler failed to present any evidence that Indianhead's offer was not a good faith offer. Fiedler has thus failed to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). We conclude that no jury could find that Fiedler's refusal of the offer of reinstatement was reasonable.

*Fiedler*, 670 F.2d at 808–09 (footnote omitted).

In summary, this court holds that Holmes has failed to generate a material question of fact supported by specific factual showing that either Marriott's offer of reinstatement was anything other than unconditional or that Holmes' refusal to accept it was reasonable. Therefore, Marriott is entitled to partial summary judgment pursuant to Federal Rule of Civil Procedure 56. Any liability of Marriott for Holmes' back pay and front pay have been tolled by Holmes' June 12, 1991 response to the May 20, 1991 Palladino let-

---

12. The court in *Ford Motor Co.* noted that plaintiff moving a great distance to find a replacement job might provide a special circumstance justifying an exception to the general rule that the accrual of back pay liability is told by the failure to accept an unconditional offer of reinstatement. *Ford Motor Co.*, 458 U.S. at 238, 102 S.Ct. at

3069 n. 27. However, not only has Holmes failed to assert that his move to North Carolina constituted a special circumstance, there is no showing in the summary judgment record that his move to North Carolina was to find a replacement job.

ter. "Generally, the relevant period for measuring back pay is the time between the termination *and plaintiff's action upon an offer of reinstatement . . . ."* *Fiedler,* 670 F.2d at 809 (emphasis supplied).

## VII. CONCLUSION

For the reasons stated above, Marriott's well-conceived, presented and argued motion for summary judgment is denied except for the their argument that any back or front pay to which Holmes may become entitled, is tolled by his June 12, 1991 rejection of Marriott's May 20, 1991 unconditional offer of reinstatement.

The issues that Marriott raised and that I have rejected are very close ones. It appears the evidence supporting Marriott's asserted legitimate non-discriminatory reasons for the termination of Holmes is strong and that Holmes' evidence of age discrimination is relatively weak. Nevertheless, issues of an employer's motivation in discharging an employee—often riddled with subtleties and nuances from which vastly different conclusions may be drawn—are particularly well-suited for determination by the ultimate trier of fact—in this case a jury.

**IT IS SO ORDERED.**