994 F.2d 543
 61 Fair Empl.Prac.Cas. (BNA) 1591,
61 Empl. Prac. Dec. P 42,274
Lucille B. JOHNSON, Appellant,
v.
GROUP HEALTH PLAN, INC., doing business as Group Health,
Inc., a Minnesota non-profit corporation, Appellee.
 No. 92-3181.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 17, 1993.
Decided June 4, 1993.
 
 Robert Brill, Minneapolis, MN, argued (Robert S. Brill and Patrick J. Kelly, on the brief), for appellant.
 James Dawson, Minneapolis, MN, argued (James M. Dawson and Penelope J. Phillips, on the brief), for appellee.
 Before MAGILL, Circuit Judge, LAY and HEANEY, Senior Circuit Judges.
 MAGILL, Circuit Judge.
 
 
 1
 Lucille Johnson appeals from the district court's grant of summary judgment in favor of defendant Group Health Plan, Inc. (GHI). Johnson alleged GHI discharged her from her job in violation of the Age Discrimination in Employment Act and the Minnesota Human Rights Act. We hold that Johnson has raised genuine issues of material fact and GHI was not entitled to judgment as a matter of law. We reverse and remand for further proceedings.
 
 I. BACKGROUND
 
 2
 Johnson, who presently is fifty-nine years old, was employed in 1952 by Physicians Clinic and worked for Physicians Clinic in a variety of clerical positions until 1981. In 1981, Johnson was promoted to the position of business manager for the clinic. GHI purchased Physicians Clinic as a going concern January 1, 1989, and Jane Siegal hired Johnson as the GHI clinic manager. Johnson served in this position from January 1, 1989, until she was terminated in May 1990. Johnson was replaced by a younger male employee.
 
 
 3
 Johnson's daughter, Cynthia Fuller, was also employed by Physicians Clinic, having been hired in 1976. When GHI purchased Physicians Clinic, it hired Fuller as the clinic systems supervisor. Johnson supervised Fuller before GHI purchased the clinic, and continued to supervise her in her new position with GHI. When Siegal, Johnson's supervisor for GHI, learned that Fuller was Johnson's daughter, she informed Johnson of GHI's no-nepotism policy which prohibits one relative from supervising another. Siegal negotiated with Fuller for Fuller to remain in her position as clinic systems supervisor for one year, during which time she could look for another position at GHI. Fuller remained in that position until February 1990. When Fuller left the clinic, Johnson took over Fuller's duties.
 
 
 4
 Johnson's niece, Jennifer Fossing, was hired by Physicians Clinic in 1987 as a summer receptionist, and became a permanent receptionist in November 1988. GHI hired Fossing in January 1989 when it purchased the clinic. Johnson did not directly supervise Fossing at that time. Fuller did supervise Fossing, however, and when Johnson assumed Fuller's duties in February 1990, Johnson began supervising Fossing.
 
 
 5
 In the early part of 1989, Johnson took on the responsibility of opening the clinic each day, and arranged for herself to be reimbursed for this task. Siegal told Johnson this reimbursement was against the code of conduct and Johnson stopped the practice. Because of problems the clinic experienced in 1989, GHI hired a consultant to identify the cause of the problems and make suggestions. This consultant filed a report in August 1989 (the Keiser Report). Johnson is not mentioned in this report, nor is her position as clinic manager mentioned.
 
 
 6
 In January 1990, Siegal filed a written appraisal of Johnson's performance. In preparation for this appraisal, Siegal obtained written comments about Johnson from one of the clinic doctors, Dr. Klevan. Klevan expressed trust in Johnson's abilities and praised her. The performance appraisal authored by Siegal contains no negative comments regarding Johnson's performance, and contains many very positive comments. The appraisal states that in 1989, the clinic suffered problems of stress, disorganization, and poor morale. However, Siegal blames these problems on the takeover by GHI, and attributes the current stability of the clinic to Johnson. Siegal praises Johnson for her efforts to communicate with others in the clinic, her vision for the clinic, effective problem solving, resource management, loyalty, and dedication. Siegal states that Johnson "deserves nothing but congratulations." After this appraisal, Johnson received a pay increase.
 
 
 7
 In February 1990, Siegal received the results of a fall 1989 employee climate survey which contained negative comments. This survey does not mention Johnson by name, nor does it mention her title. In April, Siegal was told that Johnson had lent a GHI typewriter and transcription equipment to her daughter. On May 2, 1990, Siegal gave Johnson a memorandum stating that she had serious concerns about her ability to serve as clinic manager, and asked for her resignation. Johnson was then terminated.
 
 
 8
 Johnson brought this action alleging, inter alia, that GHI terminated her in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the Minnesota Human Rights Act, Minn.Stat. § 363.01 et seq. GHI moved for summary judgment and the district court granted GHI's motion on all claims. Johnson appeals, claiming the court erred in granting summary judgment with respect to her claims that GHI violated the ADEA and the Minnesota Human Rights Act.
 
 II. DISCUSSION
 
 9
 We review the district court's grant of summary judgment de novo, United States ex rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir.1992), and we apply the same standards used by the district court, Thelma D. by Delores A. v. Board of Educ., 934 F.2d 929, 932 (8th Cir.1991). We affirm only when the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Osborn v. E.F. Hutton & Co., 853 F.2d 616, 618 (8th Cir.1988). We view all the evidence in the light most favorable to the nonmoving party, Johnson, and give Johnson the benefit of all reasonable factual inferences. See Simmons v. Diamond Shamrock Corp., 844 F.2d 517, 519 (8th Cir.1988). Johnson does not need to prove in her favor an issue of material fact; she need only show evidence of a material factual dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).
 
 
 10
 To bring an age discrimination claim under the ADEA, the plaintiff first must establish a prima facie case of discrimination.[1] If the employer furnishes a legitimate nondiscriminatory reason explaining why the plaintiff was terminated, the plaintiff must offer evidence that the reasons given by the employer are pretextual. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). To rebut the employer's asserted justification, the plaintiff does not need to persuade the court that a discriminatory reason more likely motivated the employer; the plaintiff needs only to discredit the proffered reasons. MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1059 (8th Cir.1988).
 
 
 11
 To establish a prima facie case, Johnson must establish the following four elements: (1) she was between forty and seventy years old at the time of her termination; (2) she was performing her job at a level that met GHI's legitimate expectations; (3) she was terminated; and (4) her employer attempted to replace her with someone providing the same service. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824; see also Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir.1987), cert. denied, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988). GHI admits that Johnson is within the protected age group, she was terminated, and she was replaced by a younger person who provided the same service. However, GHI contends Johnson was not performing her job at a level which met GHI's expectations, and thus has failed to establish a prima facie case.
 
 
 12
 Johnson has submitted evidence that her performance was satisfactory to GHI in January 1990. The performance appraisal written by Siegal in January was overwhelmingly positive, Dr. Klevan's written evaluation indicated Johnson's performance was at least satisfactory, and Johnson received a pay increase following the January performance appraisal. GHI contends that this evidence does not demonstrate Johnson's performance was satisfactory after January.[2] However, Johnson was dismissed a scant four months later, and the record contains no evidence predischarge to indicate that Johnson's performance was less than satisfactory during those four months.
 
 
 13
 GHI contends that it received in February the results of an employee attitude survey taken in the fall of 1989, and this survey contained negative comments regarding morale, favoritism of relatives, lack of leadership, lack of training, and the need to change top management at the clinic. However, Johnson argues this attitude survey is not legitimate evidence that her work was unsatisfactory after her January performance appraisal. To support this argument, she points out that the attitude survey did not focus on Johnson. Instead, the issues raised in the survey, which was taken in the fall of 1989, were consistent with those raised in the Keiser Report, which also was written in 1989. The Keiser Report suggested the clinic was in turmoil due to the takeover and the type of problems which attend any takeover. The Keiser Report does not suggest that Johnson was the source of any of the clinic's problems. Johnson's positive performance appraisal also suggests that any problems in the clinic resulted from the takeover, and in addition, praises Johnson for her performance in dealing with these problems. This outstanding performance review given several months after the survey was taken and the review's suggestion that the clinic's problems were due to the takeover is inconsistent with GHI's claim that the survey demonstrates Johnson's performance was inadequate, and establishes an issue of material fact.
 
 
 14
 GHI argues that it received feedback from other employees as late as April that Johnson's work was inadequate. These statements, however, were produced postdischarge. Johnson has produced sufficient evidence to establish an issue of material fact as to whether she was performing her job at a level satisfactory to GHI. See Raschick, 830 F.2d at 1499 (holding sufficient to establish an issue of material fact evidence of a positive job review one month before termination and nothing in the record predischarge to indicate the employee was not performing in a satisfactory manner).
 
 
 15
 Next, GHI contends that even if Johnson did establish a prima facie case, GHI had legitimate nondiscriminatory reasons to discharge Johnson. It offers the following nondiscriminatory reasons which it also listed in the memorandum to Johnson requesting her resignation: (1) Johnson authorized payment to herself in early 1989 for opening the clinic; (2) Johnson withheld information that Fuller was her daughter when GHI was deciding to hire Fuller; (3) Johnson used Fuller's "consulting services" in the clinic; (4) Johnson lent GHI equipment to her daughter, Fuller, in knowing violation of GHI policy; and (5) Johnson continued to supervise her niece, Fossing, in knowing violation of corporate policy.
 
 
 16
 Under the McDonnell Douglas burden-shifting analysis, Johnson must produce evidence discrediting these proffered nondiscriminatory reasons. Again, to avoid summary judgment, Johnson needs only to establish an issue of material fact regarding whether these reasons are credible.
 
 
 17
 Johnson's conduct of authorizing payment to herself for opening the clinic may be unacceptable behavior to GHI. However, use of this incident as a reason to discharge Johnson must be viewed in context. This incident was completely dealt with in the spring of 1989, and GHI states that it is firing Johnson for this incident more than a year later. Johnson's submission of her exemplary performance review and GHI's failure to mention the incident in the review raises a genuine issue of material fact as to whether GHI's reliance on this incident is pretextual.
 
 
 18
 Next, Johnson contends that GHI's statement that she withheld information that Fuller was her daughter when GHI was deciding to hire Fuller is pretextual. The record demonstrates that physicians and staff at the clinic knew about the relationship and Johnson was not aware at the time Fuller was hired that GHI had a no-nepotism policy. Johnson objects to use of the term "withholding" information when the information was common knowledge in the clinic. She also argues that if she was unaware when GHI hired Fuller that it was against GHI policy for her to supervise Fuller, she had no reason to mention Fuller was her daughter. Johnson notes that GHI discovered this situation immediately after Fuller was hired, and allowed Fuller to work one year in that position. Finally, Johnson points out that GHI did not mention this incident in Johnson's performance appraisal. We hold Johnson has produced sufficient evidence to raise the issue of whether this proffered reason is pretextual.
 
 
 19
 Johnson also claims that GHI's proffered reason concerning Johnson's use of Fuller's "consulting services" was pretextual. First, Johnson contends that characterization of Fuller's services as "consulting services" is unfair because it implies that Fuller was being paid. Johnson has submitted an affidavit from Fuller stating that she was not paid for her time. Instead, Fuller volunteered her services and had no expectation of payment. Second, Johnson argues that it is not credible for GHI to claim it fired Johnson on the ground that Fuller was in the clinic helping the staff. Johnson argues that Fuller was providing GHI with a much-needed service free of charge. Fuller had volunteered to train the clinic staff to use the after-insurance billing system because no one in the clinic knew how to operate this system. We believe Johnson has raised an issue of material fact concerning GHI's reliance on this reason.
 
 
 20
 Fourth, Johnson argues that even if her action of loaning the typewriter and transcriber to Fuller was a violation of corporate policy, it was a minor infraction. She contends that in the context of her positive performance appraisals, this minor infraction did not rise to the level of a reason to terminate her. We do not contest GHI's right to discharge employees for violations of corporate policy. However, taken in context, when there was a total lack of negative evidence about Johnson's performance and Siegal gave a glowing performance appraisal such a short time before Johnson's dismissal, we believe she has raised an issue of material fact regarding whether this reason is pretextual.
 
 
 21
 Finally, Johnson contends that her supervision of Fossing was not in violation of the GHI no-nepotism policy. The no-nepotism policy which was effective November 1989 contained a provision stating relatives employed prior to the development of the policy would not be affected except in situations regarding future hiring, discipline, contracting, compensation, promotion, or termination of or by a relative. Johnson has provided credible evidence that Fossing is within this exception in the policy, and that Johnson did not violate the no-nepotism policy. Fossing was hired by GHI in January 1989, which was prior to the development of the policy. Additionally, Fossing came under Johnson's supervision because of staffing changes initiated by GHI, not Johnson.
 
 
 22
 GHI argues that Johnson's evidence is insufficient to create issues of material fact when considered in the context of Johnson's age when GHI hired her. GHI contends that it is not credible that Siegal would hire Johnson in January 1989 at age fifty-five, and then fire her because of her age less than two years later. If the situation under which Siegal hired Johnson had been a normal hiring situation, we might agree. See Lowe v. J.B. Hunt Transp., 963 F.2d 173 (8th Cir.1992); see also Proud v. Stone, 945 F.2d 796 (4th Cir.1991). However, Johnson was hired when GHI took over Physicians Clinic. Johnson had been working for Physicians Clinic for many years, and her experience with the clinic and doctors would be a valuable asset to GHI during the transition period. Considering the background facts, we believe it is credible that Siegal would hire Johnson in 1989, make use of Johnson's experience during the transition period, and then terminate her because of her age.
 
 III. CONCLUSION
 
 23
 Johnson has submitted sufficient evidence to raise issues of material fact concerning whether her job performance was satisfactory and whether GHI's proffered reasons for firing her were pretextual. Accordingly, we reverse the district court's order granting summary judgment and remand for further proceedings.
 
 
 
 [1]
 A claim for age discrimination under the Minnesota Human Rights Act is subject to the same standards as a claim under the ADEA. Therefore, the discussion regarding Johnson's ADEA claim is equally applicable to her claim under the Minnesota Human Rights Act
 
 
 [2]
 GHI also argues that Johnson's performance was unsatisfactory before the January appraisal, and describes several examples. In the face of the exemplary January appraisal which has only praise for Johnson's performance, however, their argument simply reinforces our conclusion that a genuine dispute about Johnson's performance exists