—the alleged exposure to raw sewage while in isolation confinement;

—defendant Holshouser's failure to deliver plaintiff's lunch on or about July 28, 1992; and

—the denial of visitation with plaintiff's mother on an occasion in May, 1992.

**IT IS FURTHER ORDERED, AD-JUDGED and DECREED** that summary judgment is entered in favor of all defendants and against plaintiff on all claims concerning the following:

—the denial of clothing, bedding and toiletries while plaintiff was in solitary isolation confinement;

—the lack of running water while plaintiff was in solitary isolation confinement;

—the denial of a blanket while plaintiff was in solitary isolation confinement;

—the decision to place plaintiff in isolation confinement arbitrarily, without notice, without a hearing or specific findings, with no right to counsel, and without an independent investigation of the charges;

—the denial of visitation with plaintiff's mother on July 25, 1992; and

—the alleged inadequacy of the operating budget of the Cape Girardeau County Jail.

**IT IS FURTHER ORDERED, AD-JUDGED and DECREED** that Count II of the second amended complaint is dismissed.

**IT IS FURTHER ORDERED, AD-JUDGED and DECREED** that Norman Copeland, Leonard Hines, Michael Hurst, Robert Scott, John Holshouser, Officer Stoffregen, Officer Hampton and Officer J.P. Mulcahy are dismissed as parties-defendant.

George Stacy CRUMM, Plaintiff,

v.

OCE'–BRUNING, INC., Defendant.

No. 4:93CV725SNL.

United States District Court, E.D. Missouri, Eastern Division.

June 28, 1995.

Mary Anne Sedey, William E. Moench, Kathryn S. Render, Mary Anne Sedey, P.C., St. Louis, MO, Stephen M. Ryals, Kessler and Soffer, Clayton, MO, Richard W. Noble, Kansas City, MO, Gregory M. Dennis, Perry and Hamill, Overland Park, KS, for plaintiff.

Michael P. Burke, Anne J. Erwin, Bryan Cave, St. Louis, MO, Patrick W. Ritchey, Scott W. Kezman, David J. Kolesar, Pittsburgh, PA, for defendant.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiff has filed this employment discrimination action alleging that he was terminated from his position as a copier sales representative on the basis of age. He contends that his discharge was in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Missouri Human Rights Act (MHRA), § 213.010 R.S.Mo. This matter is before the Court on the defendant's motion for summary judgment (# 33), filed August 12, 1994. Responsive pleadings have been filed. This case is set for trial on the Court's trial docket of July 31, 1995.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.,* 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant,* 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some

doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.

Plaintiff began his employment with Bruning Company in 1970 as a field sales representative of photocopying machines and supplies. Over the next twenty (20) years, plaintiff received several promotions and was regularly recognized as one of the top sales representatives in the St. Louis sales district. He exceeded his sales quotas at least eight (8) times during these years, thereby earning membership in the "100 Club"[1] Plaintiff was a member of the "100 Club" from 1984–1989.

From August 1987 through July 31, 1991 G.B. Richardson was Bruning's St. Louis District Manager and plaintiff's direct supervisor. As a district manager, Richardson supervised the field sales representatives and made the personnel decisions for his district. A district manager's compensation is tied to the sales performance of his district.

Sales quotas are set for each field sales representative within a district. The quotas are divided into two categories: Pressure Diazo machines (PD) and Plain Paper machines (PPC). Bruning Co.'s fiscal year ran from August 1 through July 31; e.g. Fiscal Year 1989 (FY89) ran from August 1, 1988 through July 31, 1989, FY90 from August 1, 1989 through July 31, 1990, etc.

Late in FY89 Richardson counseled the plaintiff about below performance standards in his machine sales. In a written memorandum, dated June 26, 1989, he reiterated to plaintiff that Bruning's minimum sales standard was 80% in table top placements and 80% in all other categories combined. Defendant's Exhibit C. Plaintiff's sales performance was running at 61%. Richardson set out five (5) performance goals for plaintiff to meet in order to improve his sales performance before the fiscal year ended. Following receipt of this memorandum, plaintiff finished out FY89 by satisfying 70.6% of his quota for PD machines and 27.5% of his quota for PPC machines. His sales quota for FY90 improved to 71.4% for PD machines and 93.4% for PPC machines. Defendant's Exhibits D and E.

However, in FY91 plaintiff's sales began to again decline. As of March 1991, the first seven (7) months of FY91, plaintiff had sold only one 9036 PPC machine. On March 6, 1991 Richardson sent plaintiff another memorandum counseling him about his below minimum sales performance. Defendant's Exhibit F. Richardson set out new performance goals, including the sales of two 9036 PPC machines by May 1st, to assist plaintiff in improving his sales quotas. Richardson further warned plaintiff that failure to sell at least two machines by May 1st would be cause to put him on probationary status. Defendant's Exhibit F, Plaintiff's Deposition, pg. 66.

Plaintiff sold at least one PPC machine in April[2] but failed to sell any machines in May

---

**1.** The Court is not exactly sure as to what constitutes the "100 Club". Neither party defines the term or what qualifies an employee for membership in the Club. However, it appears from plaintiff's testimony that membership in the Club was a significant achievement obtained only by a few field sales representatives. It appears that

membership in the Club could only be obtained by making a significantly large amount of sales.

**2.** Defendant's Exhibit G reflects the dollar value of all sales, leases or rentals obtained by a field sales representative during the specified period.

or June of 1991. He completed FY91 by satisfying only 55.2% of his sales quota for PD machines and 35.9% of his sales quota for PPC machines. Defendant's Exhibit G. He ranked last in machine sales for FY91 of all St. Louis district field sales representatives. Plaintiff was not placed on probationary status.

In July 1991 defendant Oce' acquired the Bruning Co. Oce'–Bruning's fiscal years were changed to run from December 1 through November 30th. The transitional period, August 1, 1991 through November 30, 1991, was considered Stub Year 92; FY92 then ran from December 1, 1991 through November 30, 1992.

On August 1, 1991 Richardson was replaced by Edward Turner. Mr. Richardson left the St. Louis sales district and went to Indianapolis as a field sales representative. Plaintiff's Deposition, pg. 60. On August 20, 1991 Turner sent a memorandum to all of the St. Louis district field sales representatives informing them of the minimum job requirements and minimum sales goals for Stub Yr 92. Defendant's Exhibit I. He expressed his dissatisfaction with FY91 machine sales:

*"The FY'91 PPC placement performance for the St. Louis District was unacceptable. The FY'91 PD placement was marginal for the St. Louis District."*

He further warned the St. Louis District field sales representatives that job performance would be reviewed on a thirty (30) day basis, and failure to achieve satisfactory performance levels was cause for termination. Defendant's Exhibit I. The minimum sales performance level for Stub Yr 92 was set at one (1) PPC machine sale and two (2) PD machine sales per month.

Approximately thirty (30) days later, Turner completed plaintiff's FY91 job performance appraisal. Defendant's Exhibit J. Plaintiff was rated "# 2" (meets expectations) in most of the performance evaluation categories. However, in the category "sells balanced product line—sell Category I, II,

and III, as well as IV and V" (these categories refer to PD machines, PPC machines, resale, supply margin, and plotter supplies, respectively), plaintiff was rated a # 3 (below expectations). Defendant's Exhibit J.

On October 28, 1991 Turner informed plaintiff, by letter, that he had been placed on a 90–day probation period, effective November 1, 1991 through January 31, 1992. Defendant's Exhibit L, Plaintiff's Deposition, pg. 71. In this letter, Turner reviewed plaintiff's deficient FY91 machine sales, reminding him that his two (2) 9036 PD sales for the entire FY91 fell short of the goals set by Richardson back in March 1991. Turner avers that this failure should have been cause for implementation of probationary procedures; however, they were not implemented. He then points out that plaintiff is behind in sales for Stub Yr 92 to date, having made only 1.5 placements, instead of the expected 3.0 placements. Defendant's Exhibit L. Finally, he sets out certain performance goals for plaintiff to meet during his probation period. He clearly informs plaintiff that "[f]ailure to meet the minimum performance standards listed below will result in termation [sic] of employement [sic] with Oce'–Bruning." Defendant's Exhibit L. These performance goals included, but were not limited to, placing one (1) PD machine and one (1) PD machine per month.[3]

In response to his probation letter, plaintiff wrote Turner and informed him that he should be credited with an additional 1.5 PPC machines. Defendant's Exhibit M. Turner responded by saying that upon investigation of the matter, it was true that plaintiff had sold 3.5 PPC machines in FY91 and that the additional 1.5 machines were reflected in the total sales dollars on plaintiff's computerized commission statements. Although the sales had not yet made it into defendant's local office's closed order file, they were reflected in plaintiff's commission statements, thus his percentage to quota for FY91 machine sales was unchanged; i.e.

---

In April 1991 plaintiff, under category 2 for PPC machines, had a total dollar value of $15,335.00. There is no indication as to how this dollar amount translates into number of machines sold, leased or rented.

**3.** "Placing" a machine meant new business selling, leasing, or renting a machine.

35.8%. Defendant's Exhibit N; Plaintiff's Exhibit F. Turner reiterated to plaintiff that for Stub Yr 92, plaintiff had satisfied only 12% of his PD machine sales quota, and only 34% of his PPC machine sales quota.

During plaintiff's probationary period, he did not sell one PD machine per month. In November 1991 plaintiff sold $4898.00 worth of PPC machines only; he achieved only 18.9% of his combined monthly sales quotas for machine sales during December 1991 and January 1992. Defendant's Exhibits K and O; Plaintiff's Deposition, pgs. 83–85, 134.

On January 31, 1992 Turner terminated plaintiff from defendant's employ. Mr. Turner's reason for terminating plaintiff's employment was continued inadequate machine sales. Defendant's Exhibit A—Affidavit of Edward Turner; Plaintiff's Deposition, pgs. 133–34.

Defendant contends that the only reason for plaintiff's termination was his continued inadequate machine sales performance. It avers that plaintiff has failed to produce sufficient evidence demonstrating that its reason for termination is not credible and that the determining factor was plaintiff's age. Plaintiff contends that he has produced sufficient evidence to show that defendant's reason for his termination is not credible and that the only reason for plaintiff's termination was his age. Plaintiff avers that he had satisfied the terms of his probation, thus his alleged failure to comply with his probation terms and poor sales performance is just a red herring for age discrimination. He further avers that his termination was nothing more than the carrying out of defendant's policy to establish a "younger" sales force.

■ An age discrimination case may proceed to trial in one of two ways: one way involves the use of direct evidence of age discrimination; the other way utilizes indirect methods of proof of age discrimination. *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723 (8th Cir.1992); *Beshears v. Asbill,* 930 F.2d 1348, 1353 (8th Cir.1991); *Blake v. J.C. Penney,* 894 F.2d 274, 278 (8th Cir.1990). When a plaintiff produces direct evidence, such as statements by decisionmakers clearly showing that age was a motivating factor in the employment decision; or at least signifi-

cant circumstantial evidence showing a specific link between the discriminatory animus and the challenged employment decision, the burden-shifting standards established by *Price–Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), come into play. *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 996 F.2d 200, 201 n. 1 (8th Cir.1993); *Beshears,* at 1353. In the absence of such evidence, the guidelines set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) are applicable. *Johnson v. Minnesota Historical Society,* 931 F.2d 1239, 1242–43 (8th Cir. 1991); *Halsell v. Kimberly–Clark,* 683 F.2d 285, 289 (8th Cir.1982), *citing, Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), *cert. den.,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).

Plaintiff contends that he has direct evidence of age discrimination by virtue of a written statement and alleged oral statements by plaintiff's prior supervisor, G.B. Richardson, in which Richardson referred to the plaintiff as an "old man". It is undisputed that on a February 21, 1990 sales report (direct to the plaintiff) Richardson wrote at the top "Not bad for an old man from Raytown, Mo. You are among the top in the country. Good work. Keep young." Plaintiff's Exhibit D. However, despite plaintiff's general deposition testimony referring vaguely to other written and oral comments by Richardson regarding plaintiff's age, he has failed to produce any evidence of these comments other than Plaintiff's Exhibit D.

■ Even with the existence of Plaintiff's Exhibit D, the Court finds that plaintiff has failed to produce direct evidence of intentional age discrimination by this defendant. It is undisputed that Richardson left his supervisory position three (3) months prior to Turner placing plaintiff on probation, and six (6) months prior to plaintiff's termination. It is also undisputed that Richardson, as of August 1, 1991, no longer had any input in employment decisions of the defendant, and was not involved in the decision to terminate plaintiff's employment. Defendant's Exhibit A—Affidavit of Edward Turner; Plaintiff's

Deposition, pg. 60.[4] Consequently, a single remark by a non-decisionmaker fails to constitute direct evidence of intentional age discrimination by this defendant. *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 27 F.3d 1316, 1323 (8th Cir.1994); *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993); *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991). Furthermore, the Court notes that any remarks allegedly made by Richardson had to be made while plaintiff was employed by Bruning. Plaintiff has put forth no evidence that any supervisory personnel employed by the present defendant made or wrote comments implying an age-bias. Plaintiff fails to cite any caselaw which would support his contention that remarks by supervisory personnel of a different employer, no longer employed in a supervisory position by the new defendant employer, can be used to demonstrate discriminatory animus by the new defendant employer.

■ Since plaintiff has no direct evidence or evidence that directly reflects the use of age as the motivating criteria in the challenged decision, he must first establish a *prima facie* case in order to proceed to trial. *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 996 F.2d 200, 202 (8th Cir.1993). Under the ADEA, a *prima facie* case requires the plaintiff to show that he was a member of the protected class (between the ages of 40 and 65); that he was subjected to an adverse employment action; that he was qualified for a particular position or job, or was performing adequately in his job; and that he was replaced by a person not a member of the protected class. *Gaworski v. ITT Commercial Finance Corp.,* 17 F.3d 1104, 1109 (8th Cir.1994); *LaPointe v. United Autoworkers*

*Local 600,* 782 F.Supp. 347, 349 (E.D.Mich. 1992), *reversed and remanded on other grounds,* 8 F.3d 376 (6th Cir.1993); *Kehoe v. Anheuser–Busch Co.,* 995 F.2d 117, 119 (8th Cir.1993); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545–46 (8th Cir.1993); *Crady v. Liberty National Bank and Trust Co.,* 993 F.2d 132, 134 (7th Cir.1993); *Lowe v. J.B. Hunt Transp., Inc.,* 963 F.2d 173, 174 (8th Cir.1992). There is apparently no dispute between the parties that plaintiff has met the requirements of establishing a *prima facie* case of age discrimination. Consequently, the dispute is whether the parties have met their respective burdens under *McDonnell Douglas.*

■ *McDonnell Douglas, supra,* established a three-part analysis for disparate treatment cases.[5] Under *McDonnell Douglas,* a plaintiff must first establish a *prima facie* case of intentional discrimination by a preponderance of the evidence. If the plaintiff successfully establishes a *prima facie* case of intentional discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. If the defendant employer meets this burden of production, the plaintiff employee must show by a preponderance of evidence that the articulated reason(s) for the challenged employment action are pretextual and that the illegitimate criterion was the motivating reason. At all times the plaintiff employee possesses the ultimate burden of proving to the Court that s/he was the victim of intentional discrimination. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Gaworski,* at 1108.

4. Plaintiff claims that since he has not had the opportunity to take the depositions of the alleged decision-makers regarding the termination decision, it "is premature for a fact finding regarding the extent to which Defendant's managers were influenced by Mr. Richardson." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, pg. 4. However, plaintiff's complaint was filed March 30, 1993 and has been reset for trial three (3) times at plaintiff's request. None of these continuances were requested pursuant to Rule 56(f). Plaintiff's response to the instant summary judgment motion was filed October 3, 1994 (nineteen months after

filing his complaint). As of today's date, plaintiff has not requested leave to file a supplemental response to the summary judgment motion so as to include additional deposition testimony. Consequently, the Court finds plaintiff's contention that the degree of influence by Mr. Richardson regarding the termination decision is a "genuine issue of material fact" is meritless.

5. Although *McDonnell Douglas* was a Title VII action, its burden-shifting framework also applies to ADEA cases. *Gaworski,* at 1108, n. 3; *Beshears v. Asbill,* at 1353, n. 7.

Defendant has articulated a non-discriminatory reason for its discharge of Crumm, i.e. poor machine sales. Thus, "the legal presumption that would justify a judgment as a matter of law based on the plaintiff's prima facie case 'simply drops out of the picture' when the defendant articulates a nondiscriminatory explanation." *Gaworski*, at 1109, *quoting Hicks*, —— U.S. at ——, 113 S.Ct. at 2749. To avoid summary judgment, Crumm must establish an issue of material fact regarding whether defendant's reason for his termination is pretextual and age was the determining factor for the termination decision. *Johnson v. Group Health Plan*, at 547.

Plaintiff proffers six (6) arguments to support his contention that defendant's "poor machine sales" reason for termination is pretextual. He avers that 1) he was replaced by a younger employee, Dean Garrett; 2) a fellow sales representative, Keith Horton, who was terminated after the plaintiff, was over forty (40) years old; 3) his general belief that the defendant was implementing a policy of terminating older employees in favor of creating a younger workforce; 4) the fact that his previous supervisor, G.B. Richardson, had referred to him as an "old man"; 5) his observation that the defendant catered to its "younger" employees; and 6) plaintiff's personal belief that he was terminated although he had fulfilled all of the terms of the October 28, 1991 probation letter.

After reviewing the parties' pleadings, the Court finds that plaintiff's arguments # 1–5 are meritless. Firstly, the fact that a younger man may have replaced the plaintiff is germane to establishing a *prima facie* case of age discrimination, but once established this fact alone does not prove that the defendant's articulated reason is pretextual. As for other older employees (i.e. over the age of forty) being terminated

and replaced by younger employees, plaintiff presents no evidence that his discharge, as well as these other discharges, were part of a pattern of discharging employees over forty and distributing their work to younger employees. Plaintiff's only "evidence" is his mere speculations; he clearly admits in his deposition that he has no first-hand knowledge regarding these other discharges.[6] His only other evidence is a double hearsay account of what another former employee told him of a conversation with an Oce'–Bruning official. Plaintiff testified as follows:

Q. Who is Paul Stipe?

A. He was the Branch Manager in Kansas City at one time.

Q. How long ago was that?

A. Boy. Six years. I'm not—

Q. Considerably prior to your termination; would that be a fair statement?

A. That's true, yes, sir.

--------------------

Q. You understand that you have responded to an interrogatory in which you said Mr. Stipe had asked executives still with Oce'–Bruning certain things?

A. I remember that, yes, sir.

Q. Okay. What did Mr. Stipe—what—who did Mr. Stipe ask?

A. A guy by the name of Buzz Parker.

Q. Okay. Who is Buzz Parker?

A. Vice–President—or he was. I think he's a Vice–President of Sales, but I'm not sure, sir.

Q. When was this?

---

**6.** During discovery and his deposition, plaintiff identified seven (7) individuals that he "believed" were terminated due to their ages. These identified individuals are: Keith Horton, George Reddit, Joe Mannia, Frank Garbarino, Tom Lanese, Peter Kendra, and Bob Huntey. He conceded at his deposition that he had no first-hand knowledge as to the circumstances of their discharge and that his belief that these individuals were terminated solely on the basis of their ages was entirely based upon what he heard through the "employee grapevine": Keith Horton, Plaintiff's Deposition, pgs. 21–25, 119; George Reddit, Plaintiff's Deposition, pgs. 27–28, 30; Joe Mannia, Plaintiff's Deposition, pgs. 30–31; Frank Garbarino, Plaintiff's Deposition, pg. 26; Tom Larese, Plaintiff's Deposition, pgs. 119–20; Peter Kendra, Plaintiff's Deposition, pgs. 120–21; and Bob Huntey, Plaintiff's Deposition, pgs. 121–22.

A. One or two years ago or something like that. I—I suppose—I've already been gone there two years, so probably a couple of years ago, I—I think. Something like that.

Q. You don't know, then, when it was, I gather?

A. I could find out, but right now off the top of my head, I don't remember the dates.

Q. What did Mr. Stipe tell you.

A. He said that he had met up with Buzz at a trade show and just asked how come he—he—that his friend Stacy Crumm and all the other people with Bruning had gone their separate ways and had been treated so terribly or shabbily, and Buzz Parker shook his—shrugged his shoulders and said that was—I forgot what I—what he did say now, that they were going a different direction.

Q. All right.

A. I don't know what that means, but I took it to mean that—and Paul took it to mean they wanted younger people.

Q. You don't know that, do you? You weren't there.

A. No, sir.

Plaintiff's Deposition, pgs. 128–29. These statements are clearly inadmissible as hearsay. Plaintiff has failed to offer any direct testimony by Mr. Stipes as to his conversation with Buzz Parker. Plaintiff's accounting of what Mr. Stipe's conversation was with Mr. Parker and his interpretation of this alleged conversation fails to support plaintiff's contention of pretext.

As for Mr. Richardson's alleged oral remarks and a written comment in which he referred to the plaintiff as an "old man", the Court has already determined that this evidence fails to support plaintiff's contention that this particular defendant's reason for plaintiff's termination is pretexual and that plaintiff's age was the determining factor for his discharge. Plaintiff has offered no evidence that Mr. Richardson was involved in the decision to terminate plaintiff; nor has he offered any caselaw which would allow a jury to infer age discrimination by a defendant employer due to the statements of the former supervisory employee of the previous employer.

Plaintiff next contends that the existence of younger employees and the social events at sales meetings creates a reasonable inference of age discrimination.

A. (continuation) The other thing is when Oce bought us, I went to nothing but sales meetings, or so it seemed. One of them was in Chicago or two of them were in Chicago, and—and there wasn't—most of the people with the corporation are young people, and when I went to Florida, most of the people were young people outside of the people that I knew, so it just—to me, it looked to me like they were—and I—and I feel very strongly that this was an overall master design to reduce the overall age of the sales force.

Q. Okay.

A. So that's my comment.

Q. I understand that's what you feel.

A. Yes, sir.

Q. I guess my question would be, then, upon what basis do you have to feel that that was the design or overall plan?

A. Well, as I said—

Q. Did you ever see a document that said that was the overall plan?

A. Oh, no. No.

Q. Did anybody ever tell you that?

A. This company isn't dumb. Did anybody ever tell me that? Not anybody in authority, no, by salemen certainly were aware of it when—when I was at these meetings with—when I was in the Florida meeting, they had disco dances, and it was hardly meant for 60–year–old people, I can assure you. That's all there was. I—it was just a general feeling.

Plaintiff's Deposition, pgs. 39–40.

■ This "evidence", like his evidence of other employees' terminations, is based upon nothing by plaintiff's own subjective beliefs.

The mere existence of younger employees (plaintiff fails to qualify what he means by "younger" employees; i.e. employees between the ages of 40–59 or employees under the age of 40) and his opinion as to what constitutes a "disco dance" and its lack of appeal to other persons of age 60 has no bearing on the issue of whether plaintiff's "poor machine sales" is a pretext for age discrimination. Granted plaintiff is entitled to the benefit of all reasonable inferences, "an inference is reasonable only if it can be drawn from the evidence without resort to speculation." *Frieze*, at 541.

Finally, plaintiff contends that the defendant's articulated reason is a pretext for age discrimination because he was terminated despite fulfilling the conditions of his October 1991 probation letter. Plaintiff concedes that in FY89 and FY91 he had generated inadequate machine sales, and that he failed to meet the performance standards set forth in Turner's August 20, 1991 memorandum. However, he contends that he was not the only poor machine sales performer and that Turner singled him out for probation and ultimately termination due to his age. In support of this contention plaintiff alleges that he wasn't given proper credit for the machines he had sold, and that pending machine sales were ignored. He further alleges that defendant purposefully thwarted his attempts to meet his sales quota by taking away his two largest accounts during his probation period.

Contrary to the plaintiff's allegations, defendant has produced evidence that clearly demonstrates that plaintiff was credited for all machines sold and that his percentage to quota sales numbers were still the lowest in FY91 and Stub Year 92. Furthermore, contrary to plaintiff's assertions, defendant's evidence shows that although the defendant was implementing a company-wide policy regarding a new major account approach (a fact not disputed by the plaintiff), it made an exception for the plaintiff and allowed him to retain all of his major accounts.

■ Plaintiff has failed to produce sufficient evidence for a reasonable jury to reject the defendant's proffered reason for its action. Plaintiff's burden in challenging a sum-mary judgment motion is not to prove an issue of material fact, but rather only to demonstrate that such an issue exists. *See, Johnson v. Group Health Plan,* 994 F.2d 543, 545 (8th Cir.1993). Unfortunately, plaintiff attempted to meet his burden by primarily relying upon what he hopes to produce later at trial; not by providing the Court with specific facts and affirmative evidence demonstrating that material issues of fact presently exist. The Court cannot deny defendant's summary judgment motion on the plaintiff's mere speculation that by the time trial commences he will have the evidence necessary to prove age discrimination.

■ The Court understands that plaintiff was a long-time employee of Bruning Co. and for many years performed successfully for it. However, even he admits, that his performance had declined noticeably by the time defendant had bought out Bruning Co. There is no question that plaintiff had been a loyal and faithful employee of Bruning Co. and well-liked by his customers. However, defendant, as the new employer, set certain sales representatives' performance standards which the plaintiff was unable to meet. The defendant's decision to terminate the plaintiff may have been a harsh decision, but this Court is not obliged to second-guess personnel decisions, unless such decisions are discriminatorily based. "There is no principle of law that requires that a business' decision be popular with employees. As long as the decision is not based on unlawful age discrimination, 'the courts have no business telling [companies] ... how to make personnel decisions, which may be objectively or subjectively based.'" *Walker v. AT & T Technologies,* 995 F.2d 846, 850 (8th Cir.1993). Crumm's scant evidence, which the Court has previously outlined above, fails to demonstrate that defendant's articulated reason for his lay-off was pretextual or that age actually motivated the defendant's decision. *Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993); *see also, St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Summary judgment will be granted to the defendant.